**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 00-11191
(Summary Calendar)
_____

GEORGE DANIELS,

Plaintiff-Appellant,

versus

CITY OF ARLINGTON, TEXAS; THERON BOWMAN,
Chief of Police, Arlington, Texas,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____
April 9, 2001

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant George Daniels appeals two rulings by the district court in this First Amendment employment case: the denial of his motion for partial summary judgment, and the grant of summary judgment in favor of Defendants-Appellees, the City of Arlington and its police chief (collectively, "the city"). Finding Daniels's claims to be meritless, we affirm the ruling of the district court.

I.

FACTS AND PROCEEDINGS

Daniels was an Arlington police officer for thirteen years. While working in a plainclothes position, he began wearing on his shirt a small, gold cross pin ("the pin") as a symbol of his evangelical Christianity. He continued to wear the pin after he was reassigned to a uniformed position, which brought him into conflict with Arlington Police Department General Order No. 205.02(C)(2)(c) ("the no-pins policy"). The General Order, as revised in November 1997, states that: "No button, badge, medal, or similar symbol or item not listed in this General Order will be worn on the uniform shirt unless approved by the Police Chief in writing on an individual basis."

Daniels requested in writing that then-Police Chief David Kunkle make an exception to the policy and allow him to continue wearing the pin on his uniform. Kunkle declined, writing to Daniels that "I have not authorized any non-department related pins and I do not intend to do so." Daniels refused Kunkle's order to remove the pin from his uniform shirt and did not respond to the police chief's offer of accommodations, which included: (1) wearing a cross ring or bracelet instead of the pin; (2) wearing the pin under his uniform shirt or collar; or (3) transferring to a non-uniformed position, where he could continue to wear the pin on his shirt. Daniels declined these alternatives and ultimately was fired for insubordination.

Daniels sued, claiming that the no-pins policy is

unconstitutional on its face, and that he had been the victim of intentional religious discrimination. The district court rejected Daniels's claims: It denied his motion for partial summary judgment on the facial challenge to the regulation and granted the city's summary judgment motion, dismissing the remainder of Daniels's claims. He timely perfected his appeal of both decisions.

II.

ANALYSIS

A.  Standard of Review

This case is on appeal from a denial of partial summary judgment and dismissal on summary judgment. Therefore, we review the record de novo, applying the same standard as the district court.[1] A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact.[2] An issue is material if its resolution could affect the outcome of the action.[3] In deciding whether a fact issue has been created, the court must

_____

[1] Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998); see also Bradshaw v. Pittsburg Indep. Sch. Dist., 207 F.3d 814, 816 (5th Cir. 2000) ("For purposes of appellate review, the 'inquiry into the protected status of speech is one of law, not fact.'") (quoting Kirkland v. Northside Indep. Sch. Dist., 890 F.2d 794, 797 (5th Cir. 1989) (quoting Connick v. Myers, 461 U.S. 138, 148 n.7 (1983))).

[2] Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.[4]

The standard for summary judgment mirrors that for judgment as a matter of law.[5] Thus, the court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence.[6] In reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached.[7]

B.    Facial Challenge to the No-Pins Policy

Daniels asserts that Arlington Police Department General Order No. 205.02(C)(2)(c), one of many provisions regulating uniform standards for Arlington police, is an invalid prior restraint of speech protected by the First Amendment. He contends that the order is overbroad, impermissibly giving the police chief unfettered discretion to determine what expression may be displayed on an officer's uniform.

This argument is unavailing. As the district court correctly

---

[4] Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir. 1999).

[5] Celotex, 477 U.S. at 323.

[6] Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S. Ct. 2097, 2102 (2000).

[7] Id. at 2110.

4

noted, "[a] police officer's uniform is not a forum for fostering public discourse or expressing one's personal beliefs." The Supreme Court has upheld appropriate restrictions on the First Amendment rights of government employees, specifically including both military and police uniform standards.[8] We reached the same conclusion in a case closely analogous to this one, United States Dep't of Justice v. Federal Labor Relations Auth. ("FLRA"), in which we upheld department regulations prohibiting border patrol agents from wearing union pins on their uniforms.[9]

The city argues that the deferential rational review standard should be applied to the Arlington Police Department's no-pins policy, a test it surely passes.[10] We need not decide whether that is the singularly applicable test, however, because the no-pins policy survives even the stricter standard for reviewing restrictions on government employee speech promulgated by the Supreme Court in Pickering v. Bd. of Educ.[11] The Pickering standard balances "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interests of the

---

[8] See, e.g., Goldman v. Weinberger, 475 U.S. 503 (1986) (upholding against First Amendment challenge military uniform regulation barring wearing of yarmulke); Kelley v. Johnson, 425 U.S. 238 (1976) (upholding police uniform and grooming standards).

[9] 955 F.2d 998 (5th Cir. 1992).

[10] See, e.g., Kelley, 425 U.S. at 237.

[11] 391 U.S. 563 (1968).

5

State, as employer, in promoting the efficiency of the public services it performs through its employees."[12]

In FLRA, we assumed that the speech involved was a matter of public concern, then applied the Pickering balancing test and concluded that the government's interest in promoting the efficiency of the services provided by its employees outweighed the employees' interest in engaging in the protected speech.[13] We found that "a law enforcement agency's anti-adornment policy is [ ] entitled to deference when weighing the government's interest against the employee's interest under the Pickering/Connick [v. Myers] First Amendment test."[14]

We have used two tests, both derived from Connick, to determine whether speech relates to a "legitimate public concern."[15] Daniels fails both. The first, the citizen-employee test, turns on

---

[12] Id. at 568; see also Connick v. Myers, 461 U.S. 138 (1983). Several circuit courts have applied the Pickering test to public employee claims involving religious speech or the free exercise of religion. See, e.g., Lumpkin v. Brown, 109 F.3d 1498, 1500-01 (9th Cir. 1997); Brown v. Polk County, Iowa, 61 F.3d 650, 658 (8th Cir. 1995) (en banc), cert. denied, 516 U.S. 1158 (1996) ("[Pickering] dealt with free speech rather than the free exercise of religion, but because the analogy is such a close one, and because we see no essential relevant differences between those rights, we shall endeavor to apply the principles of Pickering to the case at hand."); Baz v. Walters, 782 F.2d 701, 708 (7th Cir. 1986).

[13] 955 F.2d at 1005-06.

[14] Id. at 1006.

[15] Kennedy v. Tangipahoa Parish Library Bd. of Control, 224 F.3d 359, 366 (5th Cir. 2000).

6

whether a public employee "'speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest.'"[16] The second evaluates the content, form, and context of a given statement. None of these three factors favors Daniels's argument. The content of his speech — symbolic conveyance of his religious beliefs — is intensely personal in nature. Its form melds with the authority symbolized by the police uniform, running the risk that the city may appear to endorse Daniels's religious message.[17] The final factor, context, perhaps weighs most heavily against Daniels. Although the First Amendment protects an individual's right, for example, to shout, "Fire!" while riding a surfboard on the Pacific swells, it offers no such protection to the same speech uttered in a crowded theater.[18] Visibly wearing a cross pin — religious speech that receives great protection in civilian life — takes on an entirely different cast when viewed in the context of a police uniform. Although personal religious conviction — even the honestly held belief that one must announce such conviction to others — obviously is a matter of great concern to many members of the public, in this case it simply

---

[16] Id. (quoting Connick, 461 U.S. at 147).

[17] See, e.g., County of Allegheny v. ACLU, 492 U.S. 573 (1989).

[18] See Schenck v. United States, 249 U.S. 47, 52 (1919) ("[T]he character of every act depends upon the circumstances in which it is done. The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic.") (citation omitted).

7

is not a matter of "public concern" as that term of art has been used in the constitutional sense.[19]

Because Daniels's communication of his personal religious views through the pin is not speech addressing a "legitimate public concern," the departmental policy does not offend the First Amendment. Application of the Pickering balancing test is thus precluded.[20] Yet, even were we to follow the path we blazed in FLRA and assume arguendo that Daniels's speech does involve a public concern, we would reach the same result. In FLRA, we held that "it is reasonable to conclude that allowing border patrol agents to wear union pins would interfere with an appearance to the public of neutrality and impartiality, which is important to the mission of

---

[19] Contrast the religious message Daniels seeks to convey with the Supreme Court's characterization of the school funding question at issue in Pickering:

> [T]he question whether a school system requires additional funds is a matter of legitimate public concern on which the judgment of the school administration, including the School Board, cannot, in a society that leaves such questions to popular vote, be taken as conclusive. On such a question free and open debate is vital to informed decision-making by the electorate.

391 U.S. at 571-72.

[20] See Connick, 461 U.S. at 146 (concluding that if employee's speech "cannot be fairly characterized as constituting speech on a matter of public concern, it is unnecessary for us to scrutinize the reasons for her discharge"); Teague v. City of Flower Mound, 179 F.3d 377, 383 (5th Cir. 1999).

8

all law enforcement agencies."[21]

Although it is true that unions are secular and religions sectarian, the analogy between Daniels's case and FLRA is tight. As recognized in FLRA, the city through its police chief has the right to promote a disciplined, identifiable, and impartial police force by maintaining its police uniform as a symbol of neutral government authority, free from expressions of personal bent or bias. The city's interest in conveying neutral authority through that uniform far outweighs an officer's interest in wearing any non-department- related symbol on it. Daniels's facial challenge to the no-pins policy fails.

C. Grant of the City's Motion for Summary Judgment

Having reviewed de novo the legal claims Daniels asserts on appeal, we affirm the district court's decision to dismiss his case with prejudice on summary judgment.

1. First Amendment

For the reasons already discussed, the district court found that Arlington Police General Order No. 205.02(C)(2)(c) as applied to Daniels did not infringe his constitutional rights of free speech, expression, or association. The court also found that the no-pins policy is facially neutral and generally applicable, and only incidentally burdens Daniels's free exercise of his religion. Therefore, concluded the court, the rule is acceptable under the

---

[21] 955 F.2d at 1007.

teaching of <u>Employment Div., Dep't of Human Resources of Oregon v. Smith</u>.[22]

On appeal, Daniels appears to focus on a single sentence in which the district court stated: "Plaintiff's argument that wearing a cross on his police uniform is mandated by his religion is wholly without merit." Daniels is correct in arguing that it is improper for a court to assess what activities are mandated by religious belief.[23] Particularly when read in context with the court's pronouncement as a whole, we do not view this sentence as a comment on Daniels's religious beliefs, but rather as a rejection of the merits of his legal claim. Even if the court's perhaps-unfortunate phrasing allows for Daniels's interpretation, however, it does not undercut the validity of the conclusion that the no-pins policy does not target religion but only incidentally affects Daniels's individual religious practice, and thus is acceptable under <u>Smith</u>.

Our conclusion that Daniels has not justified an exception to the police department's no-pins policy is analogous to the one we reached in rejecting a Muslim prison inmate's complaint after he was denied an exemption from the Texas prison policy requiring all inmates to be clean-shaven, even though wearing a beard was a tenet

---

[22]  494 U.S. 872 (1990).

[23]  <u>See</u> <u>id.</u> at 887 (warning that "courts must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim").

10

of his faith.[24]  After noting that the grooming policy of the prison has a legitimate penological justification, we found that the policy does not violate Muslim prisoners' free exercise of religion, but "merely removes or reduces one of many avenues by which they may manifest their faith."[25]  The same is equally true of Daniels's complaint:  The no-pins policy serves a legitimate governmental purpose in the context of uniformed law enforcement personnel, and Daniels undoubtedly has myriad alternative ways to manifest this tenet of his religion.

2.  Due Process and Title VII

The district court found that Daniels "presented no admissible evidence to suggest that he was terminated for the purpose of suppressing his rights protected by the First Amendment."  The court therefore rejected his Due Process and Title VII[26] claims. Daniels contends that the accommodations offered by the city were unreasonable, presenting a fact issue on his Title VII claim.  He also argues that he raised a fact issue as to Chief Kunkle's motivation, and whether Kunkle discriminated against religious speech.

We agree with the district court that Daniels presented no

---

[24]  See Green v. Polunsky, 229 F.3d 486 (5th Cir. 2000). Inmates with medical conditions precluding shaving were allowed to wear short beards.

[25]  Id. at 491.

[26]  42 U.S.C.A. § 2000e-2(a)(1).

11

evidence that he had been terminated to suppress his First Amendment rights. Therefore, no genuine issue of material fact exists as to his claims under the Due Process Clause.[27] As for his Title VII claims, we find that Daniels met that statute's requirements for establishing a prima facie case of religious discrimination, having produced summary judgment evidence that (1) he had a bona fide religious belief that conflicted with an employment requirement; (2) he informed his employer of this belief; and (3) he was discharged for failing to comply with the conflicting employment requirement.[28] With a prima facie case established, the burden shifted to the employer to show that it was unable reasonably to accommodate Daniels's religious needs without undue hardship.[29] This the city has done.

The only accommodation Daniels proposes is unreasonable and an undue hardship for the city as a matter of law. A police department cannot be forced to let individual officers add religious symbols to their official uniforms. The record shows, furthermore, that Daniels failed to respond to the police chief's

---

[27] See, e.g., Bishop v. Wood, 426 U.S. 341, 350 (1976); Williams v. Texas Tech Univ. Health Scis. Ctr., 6 F.3d 290, 294 (5th Cir. 1993).

[28] Weber v. Roadway Express, 199 F.3d 270, 273 (5th Cir. 2000); Turpen v. Mo.-Kan.-Tex. R.R. Co., 736 F.2d 1022, 1026 (5th Cir. 1984).

[29] Turpen, 736 F.2d at 1026; see also Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 68 (1986) ("By its very terms the statute directs that any reasonable accommodation by the employer is sufficient to meet its accommodation obligation.").

reasonable offers of accommodation. He cannot reject the city's good-faith efforts at accommodation because he did not fulfill his duty of cooperation.[30]

Finally, Daniels raised no fact issue as to Chief Kunkle's motivation. The undisputed facts show the opposite of pretext: The chief never denied that the cross is a religious symbol. The parties disagree only as to whether such symbols are appropriate accoutrements for police uniforms. Daniels's Title VII claim fails.

3. Equal Protection

Daniels also contends that genuine fact issues exist as to whether the city discriminated against religious speech by allowing other forms of symbolic speech. Daniels testified that he had seen, or heard about, many items of ornamentation worn on uniforms during his thirteen years with the Arlington Police. Former Chief Kunkle stated that before the no-pins order became effective in November 1997, he had approved pins promoting programs in which the city or police department directly participated, such as the DARE anti-drug campaign. In 1990, Kunkle had encouraged officers to wear red ribbons commemorating the 1985 slaying of federal drug agent Enrique Camarena. Daniels also points to his own affidavit,

---

[30] See, e.g., Brener v. Diagnostic Ctr. Hosp., 671 F.2d 141, 146 (5th Cir. 1982) ("Although the statutory burden to accommodate rests with the employer, the employee has a correlative duty to make a good faith attempt to satisfy his needs through means offered by the employer.").

13

in which he stated that he attended a supervisory meeting in January 1997, in which Kunkle said he would not authorize the wearing of cross pins on uniforms because they "might offend someone."[31]

The district court nevertheless found that Daniels failed to produce any competent summary judgment evidence that the city discriminated against religious speech while allowing other forms of symbolic speech. In fact, the court found that the evidence showed Daniels was the only officer in the Arlington Police Department who had applied for an exception to the no-pins policy since its enactment. Viewing the facts and their inferences in the light most favorable to Daniels, we are convinced that he has not proven any disparate treatment or shown that any non-Christian pin request was approved or otherwise handled differently from his. He has created no genuine issue of material fact on this point.

4.  Texas Laws and Constitution

The district court rejected Daniels's argument that the police chief's order to remove his pin from his uniform was unlawful under Texas law. The court held that the state constitution and laws, including the Texas Commission on Human Rights Act ("TCHRA"),

---

[31] A contemporaneously prepared summary of a January 9, 1997, employee representatives' meeting states that any unauthorized pins were ordered removed: "Police officers must accept that their appearance must be professional and neutral and inoffensive to public sensibilities. Even seemingly inoffensive religious symbols are not to be worn where they can be viewed by the public because they may indicate to others hostility to their own religious beliefs."

14

afford Daniels no greater protection on his claims than does federal law, and that he was properly terminated for insubordination after refusing to comply with the chief's order.

Although Daniels assigns error to these conclusions, the Texas Supreme Court has held that the TCHRA is modeled on Title VII of the federal Civil Rights Act, and should be interpreted in the same manner.[32] Daniels's civil rights claims under the state constitution are similarly unavailing because tort damages are not recoverable for violations of the Texas Constitution.[33]

### III.

### CONCLUSION

We discern no merit in any of Daniels's assignments of error. A police department does not violate the First Amendment when it bars officers from adorning their uniforms with individually chosen adornments, even when those decorations include symbols with

---

[32] See Chevron Corp. v. Redmon, 745 S.W.2d 314, 316 (Tex. 1987, no writ); see also Dallas Fire Fighters Ass'n v. City of Dallas, 885 F. Supp. 915, 927 (N.D. Tex. 1995); Grant v. Joe Myers Toyota, Inc., 11 S.W.3d 419, 423 (Tex. App. — Houston [14th Dist.] 2000, no pet.) (evaluating TCHRA religious accommodation claim by applying federal interpretations of Title VII).

[33] See Gillum v. City of Kerrville, 3 F.3d 117, 122 (5th Cir. 1993) ("Texas courts have not recognized a violation of Article I, Section 8, as an actionable constitutional tort."); Favero v. Huntsville Indep. Sch. Dist., 939 F. Supp. 1281, 1296 (S.D. Tex. 1996), aff'd, 110 F.3d 793 (5th Cir. 1997) (rejecting claim for damages under Tex. Const. art. I, § 6); City of Beaumont v. Bouillion, 896 S.W.2d 143, 147 (Tex. 1995, writ denied) ("We hold there is no implied private right of action for damages arising under the free speech and free assembly sections of the Texas Constitution.").

15

religious significance.  Therefore, the decision of the district court is

AFFIRMED.