# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 21, 2012

No. 12-60351
Summary Calendar

Lyle W. Cayce
Clerk

LATAYA COBB,

Plaintiff-Appellant,

v.

SINGING RIVER HEALTH SYSTEM,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:11-CV-32

Before STEWART, Chief Judge, and KING and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Lataya Cobb appeals the district court's grant of summary judgment in favor of Cobb's former employer, Defendant-Appellee Singing River Health System ("Singing River"), on Cobb's retaliation claim, pursuant to Title VII, 42 U.S.C. §§ 1981 and 1983 ("Title VII"). We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60351

I.

From 1997 to 2009, Singing River employed Cobb, a black female, first as a clerk and then, after she obtained her nursing degree, as a nurse beginning in 2002. She requested to be changed from full-time status to "PRN" status, where she would be scheduled to work on an as-needed basis. Between 2002 and 2004, Cobb worked in the pediatric and orthopedic departments. During this time, Cobb claims that she witnessed white nurses in the pediatric department attempting to cause certain nurses to be terminated, including some black nurses, although Cobb was unsure whether these incidents were racially-motivated. Cobb reported this alleged behavior to the hospital, but she transferred to another hospital before the matter was resolved.

Cobb thereafter worked at Singing River's Ocean Springs Hospital and Singing River's Pascagoula Hospital ("Pascagoula") for some time, and then solely at Pascagoula. Cobb had asked to work at Pascagoula because she wanted to work in pediatrics. While working at Pascagoula, Cobb alleges that she frequently was re-assigned to work in other departments. On May 6, 2009, Cobb was working in the obstetrics department, but a white nurse called Cobb to ask that Cobb return to the pediatric department so that the white nurse could go home early. This request upset Cobb, and she requested a meeting with her supervisor, Cynthia Oberoff, that same day to complain. At this meeting, Cobb alleged that she was being treated differently than white nurses. Cobb told Oberhoff that she wanted to decrease her hours and eventually leave her job because she did not feel that her job was secure. Cobb also claims that Oberhoff told her that the other nurses wanted Cobb to leave.[1] At the conclusion of this

---

[1] Oberhoff denies that Cobb complained of racial discrimination or that Oberhoff told Cobb that some nurses wanted her to leave. However, we view these facts in the light most favorable to Cobb here. *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001) (citation omitted). Although Cobb did not provide Oberhoff with greater detail regarding her racial discrimination claims, Cobb alleged several instances of racial discrimination before the

2

meeting, Oberhoff denied the other nurse's request to leave early, and Oberhoff permitted Cobb to return to work in the obstetrics department that day.

On May 19, 2009, and May 22, 2009, Cobb was not scheduled to work, and she later admitted in deposition that she did not work those days. On May 19th, she briefly went to work to take a tuberculosis test, and on May 22nd, she returned to get the test read. She also claimed that she checked one patient's paper file on May 22nd, and briefly looked at the file. Cobb's young sons accompanied her to the hospital that day. During her deposition, Cobb agreed that she was not entitled to payment for her trips to the hospital on May 19th and May 22nd. However, Cobb made a notation on the back of a staffing sheet concerning these two visits to the hospital. The notations relating to Cobb stated:

> 5/22/09 - chart, LaTaya Cobb 2º 0 badge 3-5
> 5/19/09 - chart LaTaya Cobb 0 badge 9-1040.

Oberhoff's affidavit indicates that, in accordance with the hospital's procedures, Cobb's notations suggest that she was working on patients' charts from 3 to 5 PM on May 19th and from 9 to 10:40 AM on May 22nd, and that she did not have her badge with her.

When Oberhoff saw Cobb's entries for May 19th and May 22nd, Oberhoff was upset because she was aware that Cobb was not scheduled to work those days. Oberhoff thus requested a meeting with Cobb to get an explanation for the notations. Oberhoff later claimed that Cobb told her that she had come to work to complete documentation on patients' charts, and that she did not clock in because she did not have her badge with her. As a result, Oberhoff conducted an investigation, which revealed that Cobb, in fact, had not worked on those days. Oberhoff thus recommended that Cobb be terminated for making a

district court. However, because she conceded her racial discrimination claim below, these alleged facts are not material to our review of Cobb's retaliation claim here.

No. 12-60351

fraudulent request for payment for time she had not worked. Cobb appealed her termination, but Singing River denied her appeal.

During Cobb's deposition for this case in June of 2011, she later claimed that she did not write the time entries–"3-5" and "9-1040"–on the staffing sheet, but conceded that she did write the rest of the notations for each day. She further acknowledged that her "chart" notation on May 19th was a "mistake," since she looked at a patient chart briefly only on May 22nd. Cobb further acknowledged that, until her deposition, she had told no one other than her attorney that the hour notations were not in her handwriting; instead, she claimed that she tried to tell Oberhoff and another hospital employee prior to her termination but that she was "shut off completely."

## II.

On June 24, 2009, Cobb filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging racial discrimination, retaliation, and harassment, and the EEOC provided her with a right-to-sue letter. Cobb then filed the instant suit on August 24, 2010, alleging racial discrimination and retaliation, pursuant to Title VII. Following discovery, Singing River moved for summary judgment on both of Cobb's claims. In response to the motion, Cobb conceded that Singing River was entitled to summary judgment on her racial discrimination claim, but argued that it was not entitled to summary judgment on her retaliation claim. The district court granted summary judgment to Singing River on all claims, concluding that it had proffered a legitimate, nonretaliatory reason for Cobb's termination, which Cobb had failed to rebut.

Proceeding *pro se*, Cobb timely appealed.

## III.

We review a district court's grant of summary judgment *de novo*. *Garcia v. LumaCorp, Inc.*, 429 F.3d 549, 553 (5th Cir. 2005). "The court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding whether a fact issue has been created, the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001) (citation omitted).

Title VII makes it "an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2006). Further, Title VII prohibits employers from retaliating against employees who make a charge or participate in an action brought under the statute:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). Under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), a plaintiff seeking to prove a claim of retaliation must first establish a *prima facie* case, which requires a showing that the plaintiff: (1) participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (citations omitted).

If the plaintiff makes a *prima facie* showing, the burden then shifts to the employer to articulate a legitimate, nonretaliatory reason for its employment

action. *Id.* at 557 (citations omitted). "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." *Id.* (citation omitted). "If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real . . . retaliatory purpose." *Id.* "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citations omitted). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Id.*

We conclude that Singing River is entitled to summary judgment on Cobb's retaliation claim. Cobb lodged a race discrimination complaint on May 6, 2009, and she was terminated approximately one month later on June 3, 2009. Given the temporal proximity between these two events, we assume without deciding that Cobb has established a *prima facie* case of retaliation. *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) ("Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation."). In turn, Singing River has provided a legitimate, nonretaliatory reason for its decision to terminate Cobb's employment: she falsified the hospital's staffing sheet in order to induce her employer to pay her for hours she did not work. Cobb then fails to rebut this legitimate reason. Instead, she alleges, apparently for the first time in her deposition, that she did not lie on the staffing sheet because she did not write the entries indicating she had worked certain hours on May 19th and May 22nd. If we take Cobb's version of events as true, as we must on a summary judgment motion, *Daniels*, 246 F.3d at 502, Cobb's allegations nevertheless do not create a genuine dispute of material fact to survive summary judgment.

6

No. 12-60351

As the district court correctly observed, "[e]ven if Singing River incorrectly determined that Cobb made a fraudulent request for payment, that does not tend to show that Singing River retaliated against Cobb." R. 448-49; *see Evans v. City of Houston*, 246 F.3d 344, 355 (5th Cir. 2001) ("The issue is whether the City's perception of Evans's performance, accurate or not, was the real reason for her termination." (alterations omitted)); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408-09 (5th Cir. 1999) (same). Following a thorough investigation, Oberhoff concluded that Cobb falsified the hospital's staffing sheet to induce payment to which she was not entitled. Cobb makes no allegation that the investigation itself was racially-motivated or otherwise improper; to the contrary, Cobb agreed during her deposition that if she had submitted the document requesting to be paid the noted hours, she should have been fired. Cobb simply contends that it was not her intention to request this payment. As we have noted already, Singing River was not aware of Cobb's contentions to this effect when it conducted its investigation and decided to terminate her. Therefore, even if Singing River was mistaken to terminate Cobb, this action does not warrant reversal of summary judgment on Cobb's retaliation claim. Indeed, "[m]anagement does not have to make proper decisions, only non-discriminatory ones." *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005).

We thus conclude that Cobb has failed to rebut Singing River's legitimate, nonretaliatory reason for its decision to terminate Cobb's employment. Accordingly, Singing River is entitled to summary judgment as a matter of law.

## IV.

For the foregoing reasons, the district court's judgment is AFFIRMED.

7