# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 3, 2015

Lyle W. Cayce
Clerk

No. 14-30813
Summary Calendar

CHRISTUS HEALTH SOUTHWESTERN LOUISIANA, doing business as
Christus Saint Patrick Hospital,

Plaintiff - Appellee

v.

GREENBRIER DEVELOPMENT COMPANY, L.L.C.,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:11-CV-1334

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

PER CURIAM:*

Greenbrier Development Co., L.L.C. ("Greenbrier") appeals the district court's grant of summary judgment in favor of Christus Health Southwestern Louisiana ("Christus"), as well as its denial of Greenbrier's motion for summary judgment. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-30813

**FACTS AND PROCEEDINGS**

Christus planned to build a "senior living community" ("Community") in Lake Charles, Louisiana. It entered into a Development Services Agreement ("DSA") with Greenbrier in May 2007. According to the DSA, which is governed by Louisiana law, Greenbrier would assist Christus in developing the Community by preparing budgets, providing marketing advice, and performing other development services. The DSA contemplated that Christus would eventually pay Greenbrier a "Development Fee" of $1.49 million, but this amount was payable in installments at different phases of the project. Twenty percent of the Development Fee was due immediately (although it could be paid in installments). There is no dispute that Christus paid Greenbrier this initial amount. The next 35% was due upon "Commencement of Construction."

Section 7.1 of the DSA provided that Christus could terminate the DSA "with or without cause" by providing 60 days' notice to Greenbrier. Section 7.1(a) and (b) provided that Christus could instead terminate the DSA with 30 days' notice to Greenbrier if Christus failed to obtain "corporate approvals required for development, construction and financing of the Community on the site which is subject to the option or contract to purchase" or "Permanent Financing for the Community." In the event of termination under Section 7.1(a) or (b), the DSA provided that "the parties shall have no further obligations to one another."

The parties could terminate the DSA for numerous other reasons. Most importantly, Section 7.3 of the DSA provided that Christus could terminate the DSA if Greenbrier materially failed to perform its obligations under the DSA.

Section 7.5 laid out Christus's obligations in the event of termination. Unless the DSA was terminated "for reasons enumerated in Section 7.3" (i.e., for material breach by Greenbrier), Christus would have to pay "the amount of

2

No. 14-30813

any unpaid portion of the Development Fee due prior to the date of termination" and all reimbursable expenses. Section 7.5 concluded: "Notwithstanding the forgoing [sic], in the event [Christus] terminates this Agreement without cause and at any time within one (1) year of the termination date goes forward with development of the Project, [Christus] will pay to [Greenbrier] any unpaid balance of the entire Development Fee."

Christus and Greenbrier began developing the Community, but it became obvious by late 2008 that Christus would not receive the financing it had anticipated from its parent corporation. Christus was apparently unable to find an alternative source of financing to build the Community. Ultimately, on October 28, 2009, Christus sold the land for the Community to Lake Charles Gardens, L.L.C. ("LCG"). LCG decided to construct the Community in Christus's place, and Christus remained engaged in developing the Community after selling the land. In particular, LCG retained Christus to perform developer and manager roles, which, according to Greenbrier, essentially placed Christus in the position that Greenbrier had been performing for Christus, in addition to allowing Christus to maintain its role as manager of the Community. On November 19, 2009, Christus attended the Community's "groundbreaking" event, to which Greenbrier was not invited. Finally, on December 17, 2009, Christus's CFO sent a letter providing Greenbrier with written notice that it was terminating the DSA under Section 7.1 due to failure to obtain "corporate approvals" for development or "Permanent Financing for the Community."

Greenbrier brought an arbitration case against Christus, maintaining that it was entitled to the full Development Fee under Section 7.5. In response, Christus filed a declaratory judgment action in district court. Greenbrier voluntarily dismissed the arbitration case.

3

No. 14-30813

As is relevant here, Christus requested a declaration that it had validly terminated the DSA under Section 7.1 and "ha[d] paid all amounts due to Greenbrier . . . and that nothing further [wa]s owed to Greenbrier under the Agreement."  Greenbrier counterclaimed for breach of contract, arguing that Christus owed the full Development Fee under Section 7.5 because Christus went forward with developing the Community within twelve months of terminating the DSA.  Christus filed a motion for summary judgment in the declaratory judgment action, while Greenbrier filed a motion for summary judgment on its breach of contract counterclaim.  The district court granted Christus's motion and denied Greenbrier's, reasoning that Christus properly terminated the DSA under Section 7.1 and therefore had terminated the DSA "for cause" and "had no further obligations under the Agreement."  The district court entered final judgment for Christus, effectively dismissing Greenbrier's counterclaim.

## STANDARD OF REVIEW

We review both the grant and denial of summary judgment de novo. *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001).  "A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact."  *Id.*

## DISCUSSION

### I.

Greenbrier challenges the district court's jurisdiction to grant the declaratory judgment.  It contends that Christus did not request "a decree of a conclusive character" because, even if the DSA had been terminated under Section 7.1(a) or (b), Christus would still have to pay the full Development Fee under Section 7.5.

We hold that the district court properly exercised jurisdiction. Christus's declaratory judgment action requested a declaration that it "it ha[d] paid all

4

No. 14-30813

amounts due to Greenbrier . . . and that nothing further [wa]s owed to Greenbrier under the Agreement." The district court's judgment granted this relief by granting summary judgment to Christus and dismissing Greenbrier's breach of contract claim. Further, even if Christus's declaratory judgment action requested only a declaration that its termination of the contract was "proper" under Section 7.1(a) and (b), the district court would still have jurisdiction. Unless Christus properly terminated the DSA, it would continue to have other obligations to Greenbrier, not simply payment of the Development Fee. For example, Christus would be contractually obligated to maintain certain minimum insurance coverages. Contrary to Greenbrier's argument, then, determining that the DSA was properly terminated was not a mere "academic exercise." Also, Christus's request was for "definite and concrete" relief: a declaration that the DSA had been properly terminated. The district court had jurisdiction because Christus's declaratory judgment action was a "concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged." *Rowan Cos. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989) (quoting *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240–41 (1937)).[1]

---

[1] To the extent that Greenbrier complains that Christus did not adequately request that the district court hold that it had no further liability, Christus's complaint requested this relief in its introduction section, even though neither of the complaint's counts repeated this request. Further, Greenbrier explicitly argued against this form of relief in its response to Christus's motion for summary judgment. Thus, Greenbrier had ample notice that the district court might hold that Christus had no further liability under the DSA.

As for Greenbrier's argument that the district court should have exercised its discretion to decline to consider the declaratory judgment action, we disagree. As we discuss below, Christus was entitled to a holding that it was not required to pay any additional money to Greenbrier. Deciding the declaratory judgment action was the most expeditious way to resolve the case, and it was not an abuse of discretion to do so.

5

No. 14-30813

II.

Greenbrier makes two further arguments. First, it argues that Christus's purported termination of the DSA under Section 7.1(a) and (b) did not absolve Christus from paying the full Development Fee under Section 7.5, given that the termination was not "for cause" and Christus went forward with development within one year. Second, Greenbrier argues in the alternative that Christus owed 35% more of the Development Fee because "Commencement of Construction" occurred before termination.

A.

Greenbrier advances two arguments for why it is entitled to the full Development Fee under Section 7.5. First, it argues that the conditions were not met for termination under Section 7.1(a) or (b). It argues that, because the Community was built and Christus was involved in its construction, Christus must have received financing, as well as corporate approval from its parent company. The problem with this argument is that Greenbrier presents no evidence that Christus received "Permanent Financing" as that term is defined in the DSA: "the long-term debt structure to fund the costs of acquisition, development, construction and start-up of the Community which is proposed to be repaid from future operating revenues of the Community." The only evidence in the record about the financial status of the Community is that Christus sold the land that would house the Community to LCG. Christus also produced two contracts referring to LCG as the "Owner" of the Community project and reciting that LCG was planning to construct a "retirement center" in Lake Charles, Louisiana. While these contracts allowed Christus to continue to have a limited involvement in the Community, such as by making pre-sales of units and managing the complex, the contracts are clear that Christus would perform these services for LCG and that Christus retained no ownership interest in the Community. Greenbrier alludes to the possibility

6

that Christus might have retained an ownership interest in the Community, even though it sold the Community's land. But Greenbrier offers no evidence that Christus retained such an ownership interest. Thus, there is no genuine issue of material fact that Christus retained an ownership interest in the community. Instead, Christus has offered unrefuted proof that it sold the Community to LCG, and therefore Christus was unsuccessful at securing a "long-term debt structure" to acquire, develop, and construct the Community. We affirm the district court's holding that the DSA was properly terminated under Section 7.1(b).[2]

Second, Greenbrier argues that, even if Christus properly terminated the DSA under Section 7.1(b), Section 7.5 requires payment of the full Development Fee because failure to secure Permanent Financing does not constitute "cause" for termination. Greenbrier argues that termination "for cause" means termination based on Greenbrier's breach of the DSA. In support, it cites an article in a professional law journal about construction law, which equates termination of a contract "for cause" with termination of a contract for a breach.

Greenbrier's argument fails for three main reasons. First, Section 7.1 itself provides that the parties would have "no further obligations to one another" upon termination for failure to secure "Permanent Financing." Thus, the plain text of Section 7.1 suggests that Christus should have no further obligation to pay Greenbrier. Second, Section 7.5's first sentence provides that, unless the DSA is terminated for the reasons given in Section 7.3, Christus still owes any amount already due. The next sentence provides that, unless termination is *for cause*, the full Development Fee is due if Christus goes

---

[2] We need not reach Christus's argument that the termination was also proper under Section 7.1(a).

forward with the development within one year.  This different use of language in the first and second sentences indicates that termination "for cause" is not the same thing as termination under Section 7.3.  Yet Greenbrier's definition of termination "for cause" is termination due to Greenbrier's breach, and that is the exact situation that is covered by Section 7.3.

Third, the DSA is governed by Louisiana law, which defines "[c]ause" as "the reason why a party obligates himself."  La. Civ. Code Ann. art. 1967.   A Louisiana Court of Appeals interpreted this definition to mean that termination for "cause" means termination for a reason.  *Voitier v. Church Point Wholesale Beverage Co.*, 760 So. 2d 451, 458 (La. Ct. App. 2000); *see also Duhon v. Lake Charles Elec. Joint Apprentice*, 8 So. 3d 126, 127 (La. Ct. App. 2009) (stating that "'cause' is synonymous with 'reason'" under Louisiana Civil Code, and termination for "just or good cause" must be termination for a "legally sufficient reason").   Here, Christus not only provided a reason for terminating the DSA, but it provided a reason that was enumerated by the DSA itself: failure to secure Permanent Financing.  Thus, Christus terminated the contract "for cause."  Accordingly, Christus is not required to pay the full Development Fee under the terms of the contract, even if it went forward with developing the Community within a year of the DSA's termination.

## B.

Greenbrier argues in the alternative that it is entitled to the payment of 35% more of the Development Fee because Christus achieved "Commencement of Construction" by the time it terminated the DSA.  This argument fails for two reasons.  First, Greenbrier did not raise it in either its motion for summary judgment or its response to Christus's motion for summary judgment, so it is waived.  *See State Indus. Prods. Corp. v. Beta Tech., Inc.*, 575 F.3d 450, 456 (5th Cir. 2009) ("Under our general rule, arguments not raised before the district court are waived and will not be considered on appeal unless the party

can demonstrate 'extraordinary circumstances.'").   Second, even if this argument was not waived, it fails on the merits.   The DSA defines "Commencement of Construction" as "the date the construction contract is executed between [Christus] and general contractor."  Greenbrier's only proof that this event occurred is that the groundbreaking happened before Christus terminated the DSA.  But Christus had already sold the land to LCG by this time.  Greenbrier presents no proof that *Christus* (rather than LCG) executed a construction contract with a general contractor by the time the DSA was terminated.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.