# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-41465
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
July 7, 2017

Lyle W. Cayce
Clerk

SABRINA VINCENT,

      Plaintiff - Appellant

v.

COLLEGE OF THE MAINLAND,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:14-CV-48

Before STEWART, Chief Judge, and JOLLY and JONES, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellant Sabrina Vincent sued her former employer, bringing discrimination and retaliation claims under Title VII, the Americans with Disabilities Act ("ADA"), and the Family Medical Leave Act ("FMLA"). The magistrate judge granted Defendant-Appellee's motion for summary judgment. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-41465

## I. BACKGROUND

Vincent started working for Defendant-Appellee, College of the Mainland ("COM"), in 2004 as a part time computer lab assistant. In 2008, Janis Cutaia, Vincent's supervisor, recommended and hired her for a full time computer lab position.[1] Her duties included maintaining and updating the computers in various labs, as well as assisting the students. Unfortunately, two personal tragedies prompted Vincent to take leaves of absence. Her mother's stroke and subsequent death caused her to take leave without pay from November through December of 2008. In 2009, Vincent's husband was diagnosed with terminal cancer; his illness and death prompted her to take leave from June through October 2009.

During 2010, Cutaia noticed that Vincent consistently showed up late to work. About eight months after Vincent's return to work, Cutaia approached her about her tardiness. Vincent replied that she faced "personal issues" and that she was under a doctor's care, but she offered no further explanation. After Vincent's tardiness persisted, Cutaia consulted with Human Resources and took corrective action, requiring Vincent to check in with her when she arrived at work and directing her to call or email if she was running late. Later, Cutaia moved Vincent's office to a less isolated location, resulting in her sharing an office with a coworker. However, Cutaia did not implement any formal discipline.

An altercation occurred on February 22, 2012, when Vincent again arrived late to work without notifying Cutaia. According to Vincent, Cutaia loudly confronted her in the hallway, accused her of being late for work, told her not to lie, and claimed she was "stealing time" from COM. About a week

---

[1] While at COM, Vincent also worked as an adjunct professor, but she was hired to that position independent of her job as a lab assistant.

2

No. 16-41465

later, Vincent filed a grievance stating that Cutaia's comments were racist. Lonica Bush, COM's executive director and in-house counsel for the Office of Diversity and Equity, investigated the grievance in accordance with COM's procedures and found it to lack merit, but she required Cutaia to email Vincent an apology. A review by COM's interim president upheld Bush's decision. During the investigation, Vincent revealed for the first time that she was receiving medical care for depression and anxiety and formally requested an accommodation.

In May of 2012, Bush, Cutaia, and Vincent met to discuss possible accommodations for her disability. Cutaia requested a later start time, using leave time on days she was tardy or absent, and fewer distractions in the workplace. Bush sent an email following the meeting, explaining that COM would alter Vincent's work schedule so that she could report to work later. However, to accommodate the later start date, COM reassigned Vincent to the Academic Success Lab and the Math and Science Lab. Her hours worked, pay, responsibilities, and supervisor remained the same, but it took her away from several other labs in which she had previously worked. Bush also informed Vincent that COM's policy was to allow employees to submit forms to use accumulated leave time to cover absences and tardiness. Still, Bush reiterated that Vincent had to report by phone or email when she was going to be late, give an accurate time for her arrival, and notify her supervisor when she arrived. Although Vincent had requested that COM schedule her later without changing her lab assignments, Bush replied that her supervisor had the authority to re-assign her regardless of her request for accommodation and stated that the change was necessary to provide her a later work schedule and to reduce workplace distractions.

In June of 2012, Vincent's absence from work on three consecutive days prompted COM to notify her of eligibility for leave under the FMLA. She

3

requested, and COM approved, leave for a scheduled surgery. After the surgery, Cutaia provided Vincent with expectations for when she returned to work. In particular, she wanted Vincent to spend the majority of her shift in the labs instead of her office and once again reiterated that Vincent was to notify her if she was running late.

About a month after Vincent returned from leave, Cutaia invoked COM's progressive disciplinary policy. In August of 2012, Vincent received a Level One Form Conduct Correction Plan formalizing check in procedures for arriving late. The plan noted over ten times Vincent had been late without providing notice or had provided inaccurate notice of her arrival time. Vincent refused to sign the correction plan. In November of 2012, she received a Level Two Form Conduct Correction Plan, which she also refused to sign.

On November 30, Vincent submitted a second grievance to COM alleging race, sex, and disability discrimination. She also filed formal charges with the EEOC and the Texas Workforce Commission, claiming both discrimination and retaliation. The task of investigating Vincent's COM complaint again fell to Bush, who found insufficient evidence of discrimination or retaliation. While concluding that her white male coworker, Larry Click, had made an inappropriate comment about Vincent's body, Bush determined that he had been sufficiently reprimanded and that no further incidents had occurred. Bush reiterated in her decision that the changes in Vincent's schedule and work location were necessary for her accommodation. After this second grievance, Vincent alleges that Click started following her around during her shift and taking notes on her behavior.

Cutaia issued a Level Three Form Conduct Correction Plan in June of 2013. The correction plan stated that it was due to Vincent's repeated tardiness and failure to notify from January through April 2013 and because of too much time spent in her office instead of the computer lab. Finally, in

July 2013, Vincent received a Level Four Form Conduct Correction Plan, which terminated her employment with COM.  The Level Four Plan noted that Vincent had failed to comply with the previous correction plan in the following ways: failing to arrive at the accommodated time, failing to communicate with coworkers, and failing to attend Department meetings.  Again, Vincent filed a grievance with COM alleging race and sex discrimination and retaliation under the ADA and FMLA.  COM again found these claims to lack merit and upheld her dismissal.  Vincent did not appeal that determination with COM.

In September of 2013, Vincent amended her complaint with the EEOC alleging that her termination arose out of the same retaliation and discrimination, and she received a right to sue letter.  Vincent filed suit in February of 2014.  Her suit alleged discrimination and retaliation based on sex and race under Title VII, discrimination and retaliation under the ADA, and retaliation under the FMLA.  The parties consented to jurisdiction before a magistrate judge.  After discovery, the magistrate judge granted summary judgment in favor of COM.  This appeal followed.

## II.  STANDARD OF REVIEW

We review grants of summary judgment de novo.  *Miller v. Gorski Wladyslaw Estate*, 547 F.3d 273, 277 (5th Cir. 2008).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.  56(a).  All facts are to be viewed and all inferences are to be drawn in the light most favorable to the nonmoving party.  *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001).  "An issue is material if its resolution could affect the outcome of the action."  *Id.*  Only competent evidence will satisfy a party's summary judgment burden.  *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012); *see also* Fed. R. Civ. P. 56(c).

## III.  DISCUSSION

Vincent challenges the magistrate judge's dismissal of her discrimination and retaliation claims, alleging that she introduced sufficient material facts to overcome summary judgment and that the magistrate judge misapplied the law.

### A.  Discrimination Claims

Vincent alleges discrimination based on her race, sex, and disability under Title VII and the ADA.   Title VII prohibits an employer from discriminating based on "race, color, religion, sex, or national origin."   42 U.S.C. § 2000e-2(a)(1).  The ADA prohibits an employer from discrimination based on an employee's "disability in regard to . . . hiring, advancement, or discharge." *Id.* § 12112(a).

Because there is no direct evidence of discrimination, we assess Vincent's discrimination claims under the *McDonnell Douglas* burden-shifting framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).  First, the plaintiff must make a prima facie showing of discrimination. *See Cannon v. Jacobs Field Servs. N. Am., Inc.* 813 F.3d 586, 590 (5th Cir. 2016).  Next, the burden shifts to the employer to "articulate a legitimate, non-discriminatory reason for the adverse employment action."  *Id.* (quoting *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009)). Finally, the burden shifts back "to the plaintiff to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual."  *Id.* "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

The magistrate judge assumed, without deciding, that Vincent had made a prima facie showing of discrimination.  The magistrate judge also accepted

COM's explanation that Vincent's termination was based on her failure to comply with her conduct correction plan, in accordance with COM's progressive disciplinary policy. Vincent does not contest that COM met its burden of articulating a legitimate reason for discharging her, so step two is likewise not at issue. Therefore, we will focus our analysis on step three, whether Vincent has created a material issue of fact concerning pretext. *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 659 (5th Cir. 2012).

Vincent claims that she raised genuine issues of material fact concerning whether her firing was pretextual through the affidavits of two former COM employees. She also argues that the district court erred as a matter of law by (1) determining that Brad Traylor was not a proper comparator, (2) applying an improperly narrow "nearly identical" standard, and (3) failing to extend the Supreme Court's holding in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), to discrimination claims. We disagree.

To establish pretext by showing that the employer's proffered reasons for termination are "false or 'unworthy of credence,'" *Thomas*, 788 F.3d at 179, Vincent bears the burden of presenting evidence that, viewed in the light most favorable to her, would permit a jury to conclude that COM's reasons for termination were mere pretext for discrimination. *See Laxton*, 333 F.3d at 578. In support of her motion opposing summary judgment, Vincent attached affidavits from two former COM employees, Arnetta Henderson and Dr. David Smith, which she claims show other incidents of racial discrimination by COM. However, COM objected—and the magistrate judge agreed—that the affidavits were not competent evidence. In his opinion, the magistrate judge cited COM's objection to Vincent's summary judgment response evidence, which argued that Henderson's affidavit should have been excluded because Vincent failed to disclose her as a potential witness and objected to the material portions of Smith's affidavit because they were conclusory, irrelevant, speculative, and

based on hearsay. On appeal, Vincent fails to address the magistrate judge's ruling that the affidavits were not competent evidence, so she has waived that issue. *See Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 763 n.3 (5th Cir. 2016) (issues not briefed on appeal are waived).

Without these two affidavits, all Vincent is left with is her own affidavit. However, this affidavit contradicts—without explanation—Vincent's deposition testimony where she admitted she frequently arrived late and failed to attend department meetings, which establishes her non-compliance with COM's corrective action plan. Conclusory, self-serving affidavits are insufficient to create a fact issue when they contradict prior testimony. *See Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 1984); *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 789 (5th Cir. 2017).[2]

A plaintiff can also demonstrate pretext by showing disparate treatment. *Thomas*, 788 F.3d at 179. To show disparate treatment, Vincent must establish that COM treated her more harshly than "similarly situated" employees for "nearly identical" actions. *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). Vincent points to Traylor, a white male who also suffers from depression but was not terminated, to show disparate treatment.[3] However, Traylor is not a proper comparator. Vincent has failed to establish that Traylor had attendance issues or failed to comply with supervisory instructions. "[T]he conduct at issue is not nearly identical when the difference between the plaintiff's conduct and that of those alleged to be similarly situated

---

[2] Vincent does not discuss the mixed-motive alternative, where a plaintiff can present evidence that could establish the reasons for her termination, while true, are not the sole reason for her termination and that her protected characteristics were a "motivating factor." *See Vaughn v. Woodforest Bank*, 656 F.3d 632, 636 (5th Cir. 2011). However, she would also fail under this analysis due to lack of evidence.

[3] The magistrate judge also determined that Click was not a proper comparator, but Vincent does not contest that ruling on appeal.

account for the difference in treatment received from the employer." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001); *see also Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001) (plaintiff was not "nearly identical" to other employees who had never engaged in the conduct triggering termination).

Finally, Vincent argues that the district court should have allowed her to bring discrimination claims for all of COM's actions that were "materially adverse" to her employment instead of just those actions constituting "ultimate employment decisions." *See Burlington*, 548 U.S. at 67–68 (concluding that retaliation claims protect a broader range of conduct than discrimination claims and can be brought for "materially adverse" actions against an employee instead of just "ultimate employment decisions"). In *McCoy v. City of Shreveport*, we concluded that *Burlington* did not apply to discrimination claims and continued hold that only "ultimate employment decisions" are actionable.[4] 492 F.3d 551, 560 (5th Cir. 2007). We are bound by a prior panel's determination, and Vincent has failed to identify a superseding change in law that would warrant our revisiting that decision. *See Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008).

For these reasons, we conclude that the district court properly granted summary judgment on Vincent's discrimination claims.

## B.  Retaliation Claims

Vincent also argues that the magistrate judge erred in dismissing her Title VII, ADA, and FMLA retaliation claims. Specifically, she alleges that the magistrate judge erred in determining that no materially adverse action

---

[4] Vincent's claim that *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014), stands for the proposition that this circuit has adopted the materially adverse standard in discrimination claims is unavailing. *Thompson* expressly states that "[f]or Title VII . . . discrimination claims, we have held that adverse employment actions consist of 'ultimate employment decisions.'" *Id.*

occurred other than her ultimate termination. Vincent also claims that the magistrate judge incorrectly determined that no causal connection existed between her engaging in protected activity and her employment actions.

Title VII, ADA, and FMLA retaliation claims are also analyzed under the *McDonnell Douglas* burden shifting framework. *See Wheat v. Fla. Parish Juv. Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016) (Title VII and FMLA); *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 316–17 (5th Cir. 2007) (ADA). To establish a prima facie case, the employee must demonstrate that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *See Washburn v. Harvey*, 504 F.3d 505, 510 (5th Cir. 2007).

First, the magistrate judge determined that Vincent engaged in protected activity by requesting an accommodation under the ADA and leave under the FMLA, filing her two internal complaints, and filing her EEOC complaint. Vincent does not contest this determination.

Next, the magistrate judge, applying *Burlington*, determined that the only materially adverse action taken against Vincent was her ultimate termination. Vincent alleges that other actions taken in the department were "materially adverse." *See Burlington*, 548 U.S. at 58 (an action is "materially adverse" when it would have "dissuaded a reasonable worker from making or supporting a charge of discrimination" (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006))). In her brief, Vincent focuses on Click's monitoring her in the lab and unfriendly emails from coworkers. She claims that Click's action shows retaliation because he started keeping notes on her behavior only three days after she reported his offensive comment. However, Click's behavior is not actionable as retaliation because he was not a supervisor, but a mere co-worker. "[W]hen an 'ordinary employee' recommends

termination of a plaintiff employee for a discriminatory reason, evidence of such animus is not typically attributable to the employer who ultimately terminates the employee," unless that co-worker had "influence or leverage over the official decisionmaker." *Coleman v. Jason Pharm.*, 540 F. App'x 302, 305 (5th Cir. 2013) (per curiam) (citation and internal quotation omitted). There is no evidence that Click held influence or leverage over Cutaia, even if his monitoring of Vincent was motivated by animus.    Additionally, the unfriendly emails from other coworkers are "petty slights, minor annoyances, and simple lack of good manners" that are not materially adverse employment actions. *Burlington*, 548 U.S. at 68.[5]

Even if we conclude that Vincent established a prima facie case of retaliation, the magistrate judge determined her repeated failure to follow through with the corrective action plans was appropriate justification for COM's adverse action under step two. Vincent raises no argument against that determination on appeal. *See Jenkins*, 487 F.3d at 317.

For step three, the burden shifts back to Vincent to show pretext. *McCoy*, 492 F.3d at 561–62. While a close temporal proximity to the alleged action may sufficiently establish causation, "once an employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer

---

[5] It is possible that the progressive discipline taken by COM could constitute materially adverse action under *Burlington*. *But see Hernandez v. Johnson*, 514 F. App'x 492, 499 (5th Cir. 2013) (per curiam) (letter of counseling and record of infraction not adverse employment action). Concluding that these actions were materially adverse would also potentially affect the magistrate judge's causation analysis. *See Fiest v. La., Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (A plaintiff may establish a causal connection by demonstrating close timing between the protected activity and the adverse action). However, Vincent never clearly raises this issue. *See Rodriguez*, 820 F.3d at 763 n.3 (issues not briefed on appeal are waived). Even if we were to consider such action materially adverse, Vincent's retaliation claims would still fail under step three of the *McDonnell Douglas* framework. *See Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 317 (5th Cir. 2007).

that retaliation was the real motive." *Id.* at 562 (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)).  The magistrate judge concluded that Vincent did not "submit[] any credible evidence that a retaliatory animus was a motivating factor in the adverse employment action." Similarly, Vincent failed to offer evidence to establish any materially adverse action was the result of retaliation on appeal. *See Jenkins*, 487 F.3d at 317 ("[Employee] does not make any argument regarding [employer's] proffered reason or point to any evidence demonstrating that [employer's] proffered reason is pretextual. Finding none, we agree . . . that there is no evidence of retaliation."). A plaintiff's subjective belief, without more, cannot establish pretext.  *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 487 (5th Cir. 2008).

We uphold summary judgment on Vincent's retaliation claims.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the magistrate judge's grant of summary judgment.