**REVISED JUNE 4, 2015**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-41085

JONATHAN ADAMS THOMAS,

Plaintiff - Appellant

v.

JEH JOHNSON, Department of Homeland Security,

Defendant - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

June 2, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, OWEN, and HIGGINSON, Circuit Judges.

REAVLEY, Circuit Judge:

This case involves a Title VII claim arising out of Appellant Jonathan Adams Thomas's termination from his position with the Department of Homeland Security as a probationary Border Patrol Agent. The district court granted summary judgment in favor of the government, Thomas's employer, and we affirm.

Thomas was a probationary Border Patrol agent with the Department of Homeland Security. On April 13, 2010, Thomas and his partner diverted from their assigned patrol area to visit a Border Patrol checkpoint ("the

No. 14-41085

Checkpoint"). Thomas did not ask his partner why they were straying from the assigned area, and his partner did not tell him. That day at the Checkpoint, a pair of brand new recruits were subjected to brief but intensive workouts that resulted in injuries. There was a question about the probability that the recruits had been subjected to objectionable hazing. Accordingly, all Border Patrol agents at the Checkpoint that day were required to submit memoranda addressing the incident. In pertinent part, Thomas wrote:

> When we arrived at the checkpoint, I was introduced to the new interns and then went inside to check my government email. I did not witness and [was] unaware of anything that went on outside of the checkpoint.

Video evidence showed Thomas had not been in the Checkpoint building long enough to check his e-mail and a subsequent forensic scan provided corroborating, but not conclusive, evidence that he had not checked his e-mail. Additionally, the injured probationary agents, or interns, told investigators that an African American agent had needled one of them about certain tattoos and suggested they indicated gang affiliation. Thomas was the only African American agent at the Checkpoint that day, and he was therefore investigated for possible lack of candor and racist statements.

Thomas was suspended from active duty during the investigation, whereupon he elected to submit a second, unsolicited memorandum that repeated the version of his conduct as in the first memorandum and described his own PT experiences upon first entering service as a Border Patrol agent. After ICE investigators concluded that no criminal conduct had occurred at the Checkpoint, Thomas's case was transferred to Internal Affairs and assigned to John Berent. Berent interviewed Thomas, who told him the previously submitted memoranda were "factually accurate" but clarified that while he had originally "decided to" check his e-mail, he then "decided not to" after entering the building and realizing no one was there. Berent "closed" his investigation

2

with a report favorable to Thomas.  He reported that neither of the interns had identified Thomas in a photo line-up and that both testified to a belief that the comments regarding tattoos were not racially motivated.  Further, the report indicated Thomas had "provided additional information to address the candor concern."

Notwithstanding the favorable report, Thomas's supervisor, Chief Rosendo Hinojosa terminated Thomas's employment on October 25, 2010 for "lack of candor."  Chief Hinojosa found Thomas' assertion that he knew nothing of the physical training exercises "nothing short of incredible" and further found his "assertion that [he] responded to the checkpoint without knowing a reason for leaving [his] assigned position in the field [] incredible."  He also noted how Thomas' story had shifted with respect to the original claim that he had checked his e-mail during the time of the physical training.

After exhausting his remedies with the EEOC, Thomas filed this lawsuit alleging he had been unlawfully terminated because of his race and color.  The government moved for summary judgment.  Reasoning that Thomas had shown no evidence that the given reason for his termination, lack of candor, was pretextual, the district court granted the motion.  Thomas appealed.

"We review a district court's grant or denial of summary judgment *de novo*, applying the same standard as the district court."  *Robinson v. Orient Marine Co.*, 505 F.3d 364, 365 (5th Cir. 2007).

A plaintiff lacking direct evidence of race- or color-based discrimination may yet prevail in a Title VII case by providing circumstantial evidence sufficient to raise an inference of discrimination.  *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).  In such cases, courts apply the *McDonnell Douglas* burden-shifting framework.  *See id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973)).

No. 14-41085

Under this framework, the plaintiff must make a *prima facie* showing of discrimination. *Id.* Once the showing is made, a presumption of discrimination arises, and the employer must "articulate a legitimate, non-discriminatory reason" for the adverse employment action. *See id.* at 557. The burden then shifts back to the plaintiff, who must show the articulated reason is pretextual. *Id.*

We will assume, as the district court found, that Thomas carried his initial burden of establishing a *prima facie* case of discrimination. *See Britt v. Grocers Supp. Co.*, 978 F.2d 1441, 1450 (5th Cir. 1992). Based on Chief Hinojosa's termination letter citing "lack of candor," the government has asserted a legitimate, non-discriminatory reason for Thomas's termination. *See Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011).

"A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Thomas argues that the given reason for his termination (lack of candor) is false or unworthy of credence because he was, strictly speaking, truthful at all times. He also argues he has presented evidence of disparate treatment.

Thomas argues that the factual dispute over whether he *actually* lacked candor necessarily means he has shown pretext. This argument is foreclosed. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."). Thomas was required to show not only that the determination was wrong, but also that it was reached in bad faith. *See Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1166 (5th Cir. 1993). He has not done so.

Further, there is no evidence of disparate treatment. Thomas contends that the other *probationary* Border Patrol agents who were present at the

4

Checkpoint on April 13, and who participated in the physical training exercises, also lacked candor, either because they misidentified him or because they gave accounts inconsistent in varying ways. This is not evidence of pretext. A misidentification is not a lack of candor and inconsistent stories can be the product of different recollections or experiences. Thomas was the only probationary Border Patrol agent who gave an easily falsifiable story that was seemingly falsified and was the only agent that changed and refined his story— emphasizing a trip "inside" when it seems to give him an alibi regarding what happened "outside," then explaining away as insubstantial the entire substance of his initial memo when questioned further. Even more, Thomas was the only probationary Border Patrol agent who was thought to have been involved in the physical training incident and not as a participant. The conduct of the other probationary Border Patrol agents was not "nearly identical" and does not provide a basis for finding disparate treatment. *See Vaughn*, 665 F.3d at 637. Significantly, Thomas admits that one of the other probationary Border Patrol agents was also terminated by Chief Hinojosa for lack of candor regarding an unrelated topic, which cuts against Thomas's claim that lack of candor was merely pretext with respect to his termination.

Finally, Thomas asserts that he was similarly situated to *permanent* Border Patrol agents who were present at the Checkpoint on April 13 and who, like Thomas, denied knowing anything about the hazing incident. As a matter of law, Thomas (an intern) is not similarly situated with permanent Border Patrol agents. The D.C. Circuit has "held that [federal] probationary employees and permanent employees are not similarly situated," because "under federal regulations, probationary employees may be terminated for problems even if those problems would not be good cause for terminating a permanent employee." *George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005). Our own unpublished cases are in accord. *Lewis v. Jefferson Parish*

*Hosp. Serv. Dist. No. 2*, 562 F.App'x 209, 212 (5th Cir. 2014) (finding employees not similarly situated where one was fired during her "probationary period" and the permanent employee had different job responsibilities); *Jones v. Am. Airlines, Inc.*, 100 F.3d 953 (5th Cir. 1996) (per curiam) ("The non-probationary employees to whom [plaintiff] points were not similarly situated because they were protected by collective bargaining agreements, they had different supervisors, and they had different employment records."). Other Circuits agree. *See Green v. New Mexico*, 420 F.3d 1189, 1195 (10th Cir. 2005) (finding employees not similarly situated where, among other things, the asserted comparators were not probationary employees); *Steinhauer v. DeGolier*, 359 F.3d 481, 484–85 (7th Cir. 2004) ("Purifoy and Steinhauer were not similarly situated because Steinhauer was still on probation while Purifoy was not."); *Bogren v. Minnesota*, 236 F.3d 399, 405 (8th Cir. 2000) ("[T]roopers beyond the probationary period are not similarly situated to a probationary trooper."); *Blanding v. Pennsylvania State Police*, 12 F.3d 1303, 1309–10 (3d Cir. 1993) ("Probationary troopers have traditionally been terminated more readily . . . than non-probationary troopers.").

It is undisputed that Thomas was a probationary employee entitled to less procedural protections and a different disciplinary scheme than permanent employees. Chief Hinojosa testified that, when dealing with probationary employees, "just about any disciplinary action would lead to [] termination." Moreover, the Code of Federal Regulations provides probationary employees such as Thomas "shall" be "terminate[d]" if the intern "fails to demonstrate fully his qualifications for continued employment." 5 C.F.R. § 315.803. The difference between the Border Patrol agents' employment status accounts for their difference in treatment, and they are not similarly situated. *See Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).

No. 14-41085

The district court's grant of summary judgment is AFFIRMED.