# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30007
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

November 5, 2015

Lyle W. Cayce
Clerk

HUI G. CHEN,

   Plaintiff–Appellant,

v.

OCHSNER CLINIC FOUNDATION; OCHSNER CLINIC, a Professional
Corporation,

   Defendants–Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:13-CV-5808

Before KING, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

   In this employment discrimination case, the district court granted summary judgment to the defendants, Ochsner Clinic Foundation and Ochsner Clinic, a Professional Corporation (Ochsner). The plaintiff, Hui Guo Chen (Chen), appeals. We affirm.

---

 * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30007

**I**

The following facts are not in dispute, unless otherwise noted. Chen, a native of China, began working for Ochsner in 1990. After many years as an equipment mechanic, he assumed responsibility in 2006 for the maintenance of the tube system at one of Ochsner's hospitals. Because the tube system—which transported medications, specimens, and other items between various locations in the hospital—required extensive maintenance, it was his "sole responsibility."

When Chen's work with the tube system began, his supervisor was Nicholas Sciambra. Sciambra gave Chen positive performance reviews in 2008, 2009, and 2010, and rated him "Exceeds Expectations." Even so, those evaluations did include suggestions for improvement. The 2008 and 2009 evaluations contained generic comments that Chen should continue to "develop his skills" with the tube system. The 2010 evaluation went further, adding that "[i]n the last 12 months Chen has had some problems with trouble shooting different types" of tube-system problems and noting he "seems to lose his confidence and rely on . . . co-workers" when he encounters a problem he cannot resolve. Chen's overall rating in that evaluation was 6.25, down from 6.80 in 2008 and 2009. To protest the lower performance rating and critical comments in the 2010 evaluation, Chen initially refused to sign it.

Chen's 2011 evaluation was completed by Gary Jallans, his new supervisor. That evaluation rated him as "Achieves Expectations," with a performance rating of 4.85. According to the evaluation, Chen's continued "problems trouble shooting the tube system" led the hospital to "bring in addition[al] help to resolve" tube-system problems. It further noted that Chen needed to "work on his communications skills so that he can speak . . . in a relaxed manner." Attached to the evaluation was an "Employee Learning

2

Map" that required Chen attend an advanced training class on the tube system offered by the manufacturer at the hospital's expense.

In July 2011, Jallans and Sciambra met with Chen to discuss his evaluation. It did not go well. The facilities director, Michael Lawson, happened upon the meeting and heard a "loud discussion" prompted by a disagreement about Chen's "Achieves Expectations" rating. The meeting ended early and Chen was sent to the employee health unit because he was feeling faint. Chen met twice the following week with Allison Atkinson, a human resources associate for Ochsner, to discuss the evaluation. Two more meetings with Lawson followed, but Chen continued to decline to sign the evaluation or agree to attend tube-system training.

Later that year, Chen injured his ankle at work. He filed a workers' compensation claim and was on leave from September 2011 to November 2011. While Chen was on leave, the back-up tube-system technician, Eric Danos, took his place. Danos found what he and his supervisors believed were indications that the tube system was not properly maintained under Chen's care; for example, Danos concluded that the system was missing eighty-nine tubes and forty-two more were cracked. To remedy these issues and prevent further problems, the supervisors instituted a number of requirements, including daily inspections of each of the hospital's fifty-eight tube stations and systematic monthly reporting on the state of the tube system.

Upon Chen's return in November 2011, he met with Lawson to discuss the list of necessary maintenance on the tube system and the new inspection and reporting requirements. Lawson reported that Chen disputed the necessity of the repairs and again declined to attend the manufacturer's training class. Later that month, Chen relented and agreed to participate in training.

Jallans issued Chen a "corrective action" on December 5, 2011, citing various instances of excessive tube-system downtime that he attributed to Chen's failure to correctly diagnose problems. The corrective action noted "Chen is expected to be able to assess and accurately diagno[se] tube system problems" promptly. Chen disputed the factual basis for the reprimand and appealed. While that appeal was pending, Chen was placed on probation in connection with another dispute. In the course of responding to an after-hours call for assistance, Chen spoke to Jallans by telephone. According to Jallans, Chen refused to follow basic instructions that would have re-established a connection between the tube system computer and power station computer and allowed the tube system to be remotely monitored. Supervisors did not learn of the failure to reestablish the connection until the following morning. Chen disputed the accuracy of Jallans's account, accused Jallans of trying to set him up, and appealed.

Ochsner denied Chen's appeal of his first corrective action in January 2012, noting that "[Chen's] refusal to take direction from [his] direct supervisor and [his] continued disruptive behavior . . . [was] unacceptable." The appeal of his probation was denied a month later; the denial concluded that "[Chen's] manager provided [him] with clear direction of the steps that needed to be taken to resolve the shutdown and that [Chen's] failure to follow said instructions resulted in unnecessary downtime," which "compromise[d] [Ochsner's] ability as an organization to deliver top quality care to [its] patients."

In the weeks leading up to Chen's termination, he informed Jallans that ankle pain sometimes bothered him as he performed the required daily inspections of the tube stations; Jallans responded that he should rest when that occurs and resume the inspections once he is able. In one twenty-five day period, Chen had performed only six of the required inspections. On April 19,

No. 15-30007

2012, Chen's employment with Ochsner was terminated. The termination notice cited Chen's receipt of multiple corrective actions and probation, as well as his prolonged refusal to agree to attend training.

Chen sued Ochsner in September 2013, alleging his termination was the result of discrimination. He brought claims for race and national origin discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964,[1] under 42 U.S.C. § 1981, and under the corresponding Louisiana law.[2] He also brought claims under the Americans with Disabilities Act[3] and its Louisiana counterpart.[4] The district court granted summary judgment on these claims to Ochsner and Chen timely appealed.

## II

"We review a district court's grant or denial of summary judgment *de novo,* applying the same standard as the district court."[5] Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the moving party is entitled to summary judgment.[7] To avoid summary judgment, the nonmoving party must supply

---

[1] 42 U.S.C. § 2000e *et seq.*

[2] LA. REV. STAT. § 23:301 *et seq.*

[3] 42 U.S.C. § 12101 *et seq.*

[4] LA. REV. STAT. § 23:322 *et seq.* Chen also brought various state-law claims that are not at issue here; two were dismissed for failure to state a claim, while two others were dismissed without prejudice to allow a first-filed suit to proceed in state court.

[5] *Thomas v. Johnson,* 788 F.3d 177, 179 (5th Cir. 2015) (quoting *Robinson v. Orient Marine Co.,* 505 F.3d 364, 365 (5th Cir. 2007)).

[6] FED. R. CIV. P. 56(a).

[7] *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

No. 15-30007

"evidence on which the jury could reasonably find for the plaintiff."[8]   Mere "conclusory allegations, speculation, [or] unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."[9]

### III

We first address Chen's claims of national origin and race discrimination, hostile work environment, and retaliation brought under Title VII.  This will also determine which of his claims are viable under 42 U.S.C. § 1981 and Louisiana employment discrimination law, which are "governed by the same analysis."[10]

### A

Title VII makes it unlawful to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ."[11]  When the plaintiff cannot adduce direct evidence of intentional discrimination, courts apply the well-established framework set forth in *McDonnell Douglas Corp. v. Green*.[12]   Under that framework, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case" of discrimination.[13]  To establish a prima facie case, the employee must demonstrate that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less

---

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[9] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994)).

[10] *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007).

[11] 42 U.S.C. § 2000e-2(a)(1).

[12] 411 U.S. 792 (1973); s*ee McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam).

[13] *McDonnell Douglas*, 411 U.S. at 802.

favorably than other similarly situated employees outside the protected group."[14]  If he does so, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse personnel action.[15]  Once the employer articulates such a reason for the employee's discharge, the employee bears the "ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose."[16]  "To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer."[17]

We agree with the district court that Chen has not made out a prima facie case of national origin or race discrimination.  Chen does not suggest that he was replaced by someone outside his protected group,[18] and his assertions that he was treated less favorably than other similarly situated employees outside his protected group is not supported by any evidence.  In particular, Chen's opposition to Ochsner's motion for summary judgment does not identify any employees outside a protected group whose "circumstances, including their misconduct," were "nearly identical," yet who received more favorable treatment.[19]

To be sure, Chen did assert that "all of the white employees at Ochsner remained and the only two employees terminated from the facilities departement [sic]" were Chen and Quang Nguyen, a technician of Vietnamese

---

[14] *Willis v. Cleco Corp.*, 749 F.3d 314, 320 (5th Cir. 2014) (citing *McCoy*, 492 F.3d at 556).

[15] *McDonnell Douglas*, 411 U.S. at 802.

[16] *McCoy*, 492 F.3d at 557.

[17] *Id.* (citing *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

[18] Chen did allege in his complaint that he was written up as part of his supervisors' "attempt . . . to get rid of the foreigner and replace him with a white guy," but this allegation was merely conclusory, does not speak to Chen's actual replacement, and is never supported by reference to "particular parts of materials in the record," FED. R. CIV. P. 56(c)(1)(A).

[19] *Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 213 (5th Cir. 2004).

descent. But this does not suggest that the white employees were similarly situated to Chen; indeed, there is no evidence that any of those employees had a record of performance problems and insubordination similar to Chen's. Chen also asserted that he was subjected to disciplinary actions due to tube-system downtime for which other, white technicians were actually responsible. But since only Chen had primary responsibility for the tube system, his supervisors' failure to discipline other technicians for tube-system outages does not amount to disparate treatment of similarly situated employees. In sum, the district court correctly found that Chen failed to make a prima facie case that his termination constituted disparate treatment.

## B

We now turn to Chen's hostile work environment claim. A hostile work environment claim will lie if the plaintiff can show his "work environment was so pervaded by discrimination that the terms and conditions of employment were altered."[20] A plaintiff must show he belongs to a protected group; was subjected to harassment based on membership in a protected group that "affected a term, condition, or privilege of employment"; and the employer "knew or should have known of the harassment in question and failed to take prompt remedial action."[21]

Chen cites a litany of workplace incidents that, he says, create a genuine issue of fact as to whether he was subjected to a hostile working environment. As an initial matter, we note that most of the incidents alleged by Chen had no clear connection to his race or national origin: between approximately 2005 and 2012, someone urinated in his work area while he was not present; Jallans passed gas in Chen's work area before Jallans became his supervisor; pieces of

---

[20] *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2441 (2013).

[21] *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

scrambled egg were left in Chen's desk drawer; Sciambra would use profanity with colleagues and then stop when Chen approached; a ceiling light fell to the ground in his work area; Sciambra called Chen a "rat"; an unknown substance was placed on Chen's chair and telephone receiver; his telephone was moved without his permission; the sign on the tube system room door was replaced with a sign reading, "Keith and Steve's Office"; and his boss's office had a sign instructing callers not to knock if the door was locked.  Chen's only example of a possible reference to his race or national origin came in 2008, when Sciambra allegedly told Chen—who was planning a trip to China to visit family—that he would fire him if he saw him on television during the Olympic Games.  But even this comment is not a derogatory reference to Chen's national origin, and does not reasonably support an inference that he was subjected to harassment based on his membership in a protected group.  As a result, the district court properly entered summary judgment for Ochsner on the hostile work environment claim.

Summary judgment was proper for another reason as well: the harassment to which Chen was subjected, however unwelcome, was not "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment."[22]  Whether harassment is actionable requires "'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"[23]

---

[22] *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).

[23] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Properly applied, this standard will "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, [race]-related jokes, and occasional teasing.'"[24]

The occurrences alleged by Chen do not rise to this level. Chen correctly points out that a "regular pattern of frequent verbal ridicule" can give rise to a Title VII claim. But the conduct cited by Chen, to the extent that it was harassment at all, was neither regular nor frequent. Instead, it arose sporadically, and was merely offensive rather than threatening or humiliating. The district court thus correctly concluded that the harassment alleged by Chen was not so pervasive or severe as to "affect[] a term, condition, or privilege of employment."

## C

Chen also alleged that his termination constituted unlawful retaliation for protected Title VII activity. "A Title VII retaliation plaintiff must establish that: '(1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action.'"[25] "[O]pposing any practice made an unlawful employment practice" by Title VII is a protected activity for purposes of the anti-retaliation provision of the law.[26]

We agree with the district court that Chen has pointed to no evidence that substantiates his claim that his discharge was in retaliation for protected Title VII activity. Ochsner's summary judgment memorandum argued that "it appears that [Chen] alleged that he was being discriminated against for the

---

[24] *Id.* at 788 (quoting BARBARA LINDEMANN & DAVID D. KADUE, SEXUAL HARASSMENT IN EMPLOYMENT LAW 175 (1992)).

[25] *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015) (quoting *Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 394 (5th Cir. 2000)).

[26] 42 U.S.C. § 2000e-3(a).

first time on December 7, 2011." Aside from a conclusory statement, unsupported by any citation to the record, that "[Chen] had previously made complaints that he was being discriminated against because of his national origin and race," Chen did not dispute this claim.[27] Thus, by the time of Chen's first identified instance of protected activity, he had already refused for months to agree to attend required training, received performance evaluations critical of his technical skills and demeanor, and received a corrective action for excessive tube-system downtime. It is true that Chen's actual termination came in the months following his complaints of discrimination, but since "[t]he record contains nothing connecting the allegedly protected activity and the alleged retaliation," mere proximity in time, without more, cannot establish a prima facie case that the termination was retaliatory.[28]

## D

Chen also argues that summary judgment was improper as to his 42 U.S.C. § 1981 claim because Ochsner did not specifically cite § 1981 in its summary judgment motion. "Because Ochsner did not initially put [him] on notice that it was seeking summary judgment on the 42 U.S.C. § 1981 claim," Chen argues, "Ochsner did not meet its 'responsibility of informing the district court of the basis for its motion.'"

We disagree. To begin with, Ochsner's motion adequately informed the court, and Chen, that it was seeking summary judgment on the § 1981 claim. The motion itself "request[ed] that the Court grant[] Ochsner's Motion for Summary Judgment *on Plaintiff's remaining claims*, which include: . . . [n]ational origin . . . and race discrimination, hostile work

---

[27] *See Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) ("Rule 56 does not impose upon the district court [or the court of appeals] a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." (alteration in original) (quoting *Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998))).

[28] *Zaffuto v. City of Hammond*, 308 F.3d 485, 493 (5th Cir. 2002).

environment and retaliation under Title VII . . . and the Louisiana Employment Discrimination Law." That portion of the motion contained citations to Title VII and the Louisiana law in question, but no explicit reference or citation to § 1981. But in this context—and in view of the memorandum in support's statement that "[s]ummary [j]udgment on *all of Plaintiff's remaining claims* should be granted"—we decline to infer that the motion's list of "include[d]" claims was meant to be exhaustive.[29] In addition, Ochsner did aver—in a footnote of its memorandum discussing the equivalence of federal and Louisiana law for purposes of the motion—that "the analysis applicable to Plaintiff's Title VII [and § 1981] claims also governs Plaintiff's state claims." The interpolation in brackets referring to § 1981 was supplied by Ochsner as it quoted a district court case in support of its proposition, after a lengthy discussion of the plaintiff's burden of proof in Title VII and ADA cases, that "[t]he same analysis applies to Plaintiff's state law claim of race and national origin discrimination and of disability discrimination."

To be sure, our analysis might be different if the factual and legal grounds for summary judgment on the § 1981 claim were not adequately presented by the motion or if Chen had otherwise been prejudiced by Ochsner's failure to cite § 1981.[30] But the analysis of employment discrimination claims under Title VII and § 1981 is "identical," because "the only substantive differences" between the two statutes are "their respective statutes of limitations and the requirement under Title VII that the employee exhaust

---

[29] *See* BLACK'S LAW DICTIONARY 880 (10th ed. 2014) (defining "to include" as "to contain as a part of something"); *see also id.* ("The participle *including* typically indicates a partial list.").

[30] *See Johnson v. Weld Cnty.*, 594 F.3d 1202, 1214 (10th Cir. 2010) (holding, where adequacy of notice was at issue in court's sua sponte grant of summary judgment, that "even if such notice is lacking, we will still affirm a grant of summary judgment if the losing party suffered no prejudice from the lack of notice" (citing *Scull v. New Mexico,* 236 F.3d 588, 600-01 (10th Cir. 2000))).

administrative remedies."[31]   Each legal argument and putative dispute of material fact relevant to Chen's § 1981 claim would thus be equally relevant to his Title VII claim, and Chen had every opportunity—and incentive—to raise those arguments in opposition to Ochsner's motion for summary judgment.  In addition, Chen requested and received leave to file a sur-reply once Ochsner's reply removed any doubt as to whether it was seeking summary judgment on the § 1981 claim.  We thus conclude that Chen was on notice that Ochsner was seeking summary judgment on that claim and was not prejudiced by Ochsner's failure to cite § 1981 explicitly in its motion.  Summary judgment was proper.

**IV**

Finally, Chen appeals the district court's entry of summary judgment in favor of Ochsner on his claims of disability discrimination in violation of the Americans with Disabilities Act (ADA)[32] and a corresponding Louisiana law.[33]

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[34]  A "disability," for purposes of the statute, is "a physical or mental impairment that substantially limits one or more major life activities of such individual."[35]  Major life activities include, among many other things, walking and working.[36]  An individual may also meet the disability requirement by demonstrating he

---

[31] *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005).

[32] 42 U.S.C. § 12101 *et seq.*

[33] LA. REV. STAT. § 23:322 *et seq.*

[34] 42 U.S.C. § 12112(a).

[35] *Id.* § 12102(1).

[36] *Id.* § 12102(2)(A).

was "regarded as having [a physical or mental] impairment."[37]   When the plaintiff cannot proffer direct evidence of disability-based discrimination, the *McDonnell Douglas* burden-shifting framework applies.[38]  To establish a prima facie case of disability discrimination, the plaintiff must, among other things, "establish[] that . . . [h]e is disabled or is regarded as disabled . . . ."[39]

Louisiana law likewise prohibits employment discrimination "on the basis of a disability."[40]  It defines "[p]erson with a disability" as a person with "a physical or mental impairment which substantially limits one or more of the major life activities, or has a record of such an impairment, or is regarded as having such an impairment."[41]  "To defeat a motion for summary judgment against an employment disability claim" under Louisiana law, "the claimant must establish a prima facie case that . . . he has a disability, as defined by the statute . . . ."[42]

Although Chen labors to demonstrate that the inspection requirements instituted in his absence were unnecessary and introduced solely to furnish a pretext for his removal, he does not meaningfully dispute the holding below. The district court, after summarizing the legal standard governing disability-based discrimination claims, held that "Chen has not established that he was disabled."

Chen's opening brief on appeal recognizes—as it must—that a "threshold requirement in any case brought under the ADA is a showing that the plaintiff suffers from a disability protected under the Act."  But he does not argue that

---

[37] *Id.* § 12102(1)(C); *see also id.* § 12102(3)(A).
[38] *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279 (5th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).
[39] *Id.*
[40] LA. REV. STAT. § 23:323.
[41] *Id.* § 23:322(3).
[42] *Lindsey v. Foti*, 2011-0426, p. 6 (La. App. 1 Cir. 11/9/11); 81 So. 3d 41, 44.

the district court's reasoning was flawed, suggest how his sprained ankle met the statutory definition of disability, or otherwise demonstrate that a genuine issue of material fact existed as to whether he was disabled.  He merely offers this: "Chen alleges his work related left ankle injury sustained in September, 2011, is a disability under the ADA and that he is declared disabled as of October 2012.  Plaintiff was suffering from this same injury at the time he was working for Ochsner."  That passage of his brief contains a footnote: "Exhibit 25, medical examiner certificate of mobility impairment."   Although the meaning of that footnote is not altogether clear, we note that an identical passage—with an identical footnote—appears in Chen's opposition to summary judgment filed in the district court.  There, Exhibit 25 was Chen's October 2012 application for a disabled parking permit, signed by a medical examiner.   As the district court explained, that application was not contemporaneous with the events in question and in fact, plaintiffs' medical examination records during the relevant period yield no indication he was disabled.

As the appellant, Chen was required to include in his brief his "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."[43]  A point asserted on appeal, but not "adequately briefed," is waived.[44]  Here, Chen has "[made] a conclusory argument without addressing any aspects of the district court's opinion" and has "therefore waived review of [his] argument."[45]  Even had the issue not been

---

[43] FED. R. APP. P. 28(a)(8)(A).

[44] *United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir. 2010) (quoting *Knatt v. Hospital Serv. Dist. No. 1 of E. Baton Rouge Parish*, 327 Fed. Appx. 472, 483 (5th Cir. 2009)).

[45] *Test Masters Educ. Servs., Inc. v. Robin Singh Educ. Servs., Inc.*, No. 13-20250, 2015 WL 4997705, at *10 (5th Cir. Aug. 21, 2015); *see also Coury v. Moss*, 529 F.3d 579, 587 (5th Cir. 2008) (deeming argument abandoned when appellant "present[ed] no argument to explain how [the cases it cited] constitute[d] authority" for its assertion).

No. 15-30007

waived, Chen's mere references to an ankle injury are insufficient to create a genuine issue of material fact as to his alleged disability, especially in view of his acknowledgment in his opening brief that upon returning to work he "was able to perform the job the same as he was prior to his injury."

*     *     *

For the foregoing reasons, we AFFIRM the judgment of the district court.