Reed O'Connor, UNITED STATES DISTRICT JUDGE
Before the Court is Defendant American Airlines, Inc.'s ("American's") and Defendant Charlotte Faye Courtney's ("Courtney's") Motion for Summary Judgment, (ECF No. 62 ), filed October 1, 2018; Plaintiff Jerome Madison's Response, (ECF No. 66 ), filed October 22, 2018; and Defendants' Reply, (ECF No. 69 ), filed November 5, 2018. Having considered the motion, briefing, and applicable law, the Court finds that Defendants' Motion for Summary Judgment, (ECF No. 62 ), should be and is hereby GRANTED in part and DENIED in part .
I. BACKGROUND
The Court summarized the relevant facts in its April 24, 2018 Order on the Defendants' motions to dismiss. See ECF No. 36. Those facts are briefly recounted here.
*770 This case involves a series of alleged instances of racial discrimination by Defendant Courtney, a flight attendant for Defendant American, against Madison while he was a passenger aboard American Flight 1087 on January 21, 2016. See Compl. 1-6, ECF No. 1. Madison purchased a coach ticket for Flight 1087, but American upgraded him to first class due to his Platinum status. Id. at 3. American seated Madison in the first row of the first-class cabin. Id. Madison was the only African American passenger seated in first class. Id.
Courtney offered to hang the coats of the first-class passengers. Id. Madison argues, however, that Courtney did not offer coat service to him. Id. Madison also claims Courtney took drink orders after takeoff from every first-class passenger except him. Id. When Courtney returned to deliver the drinks, Madison asked her for one. Id. Madison alleges Courtney responded in a sarcastic tone, "Do you want a drink?" Id. When Madison indicated he did, Courtney returned to the aircraft's forward galley alone, made the requested beverage, and delivered it to Madison. Id. at 3-4. When Madison attempted to drink it, he noticed it contained what he alleges to have been mucus. Id. at 4. Madison took a photograph of the substance and called Courtney to his seat. Id. Madison asked Courtney if she spat in his drink, and he alleges Courtney responded, "I have too much class to spit in your drink." Id.
After landing in Atlanta, Madison reported the incident to American's airport managerial employees, but they refused to accept a formal complaint. Id. Madison alleges an American employee asked to see the photographs of the drink on Madison's phone and, while pretending to view one of them, attempted to delete it. Id. Another American employee allegedly pushed past Madison and loudly declared that she would happily witness on Courtney's behalf. Id.
Madison filed this suit alleging Defendants American and Courtney violated 42 U.S.C. § 1981 by intentionally discriminating against him based on his race in the making, performance, modification, and termination of Madison's contract with American, and in Madison's enjoyment of all benefits, privileges, terms, and conditions of his contractual relationship with American as a passenger aboard Flight 1087. Id. at 6. Madison also pleaded state law tort claims. Madison requests compensatory and punitive damages from Defendants jointly and severally. Id. On April 24, 2018, the Court granted in part and denied in part the Defendants' motions to dismiss, leaving only the § 1981 claims. See ECF No. 36.
II. LEGAL STANDARD
A. Summary Judgment
The Court may grant summary judgment where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he substantive law will identify which facts are material." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The movant must inform the Court of the basis of its motion and demonstrate from the record that no genuine dispute as to any material fact exists. See Celotex Corp. v. Catrett , 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
When reviewing the evidence on a motion for summary judgment, the Court must resolve all reasonable doubts and draw all reasonable inferences in the light *771 most favorable to the nonmovant. See Walker v. Sears, Roebuck & Co. , 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. Anderson , 477 U.S. at 255, 106 S.Ct. 2505. If there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the Court must deny the motion. Id. at 250, 106 S.Ct. 2505.
B. The McDonnell Douglas Framework
Section 1981 discrimination claims supported by circumstantial evidence are examined under the McDonnell Douglas burden-shifting framework. See Thomas v. Johnson , 788 F.3d 177, 179 (5th Cir. 2015). Under this framework, a plaintiff must first make a prima facie showing of discrimination. Id. ; McDonnell Douglas Corp. v. Green , 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To do so, a plaintiff must proffer evidence that "(1) they are members of a racial minority; (2) Defendants intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." Body by Cook, Inc. v. State Farm Mut. Auto. Ins. , 869 F.3d 381, 386 (5th Cir. 2017). A plaintiff's showing of a prima facie case raises a presumption of discrimination. The defendant may then "rebut the presumption of discrimination by producing evidence that the" perceived discriminatory treatment was justified by "a legitimate, nondiscriminatory reason." Texas Dep't of Cmty. Affairs v. Burdine , 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ; see McDonnell , 411 U.S. at 802, 93 S.Ct. 1817.
If the defendant can "clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's" allegedly discriminatory treatment, Burdine , 450 U.S. at 255, 101 S.Ct. 1089, the burden "shifts back to the plaintiff, who must show the articulated reason is pretextual." Thomas , 788 F.3d at 179 ; McCoy v. City of Shreveport , 492 F.3d 551, 557 (5th Cir. 2007). "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the [defendant's] proffered explanation is false or 'unworthy of credence.' " Id. ; Laxton v. Gap Inc. , 333 F.3d 572, 578 (5th Cir. 2003).
III. ANALYSIS
A. Madison's Allegations Are Covered by Section 1981
The Defendants contend they are entitled to judgment as a matter of law on all Madison's claims because Madison was not denied the ability to enter into a contract and was not ultimately denied services as a first-class customer. See Defs.' Br. Supp. 21-25, ECF No. 63. In other words, the Defendants argue Madison was not denied the "enjoyment of all benefits, privileges, terms, and conditions" of his contractual relationship with American, see 42 U.S.C. § 1981(b), because Madison ultimately had his coat hung, received a drink, was offered a replacement drink, and successfully submitted a formal complaint, see Defs.' Br. Supp. 25, ECF No. 63.
Madison responds that he was effectively denied the "benefits of expanded service" and other concomitants of a first-class ticket. See Pl.'s Resp. 21, ECF No. 66. For example, Madison asserts that "[n]obody could reasonably argue that receiving a cocktail adulterated with someone's bodily fluids is tantamount to receiving the beverage service that Madison had paid for." Id. He further asserts "that Courtney did not offer to hang his heavy wool 'pea coat' when she offered to hang the light blazer of the Caucasian gentleman seated next to him, and offered to hang the coats of all of the other First Class passengers." Id. And Madison notes *772 that he and "Courtney ... have both testified that Madison's coat was ultimately hung up by Rosland Groves"-not by Courtney[1] -"the sole African-American flight attendant aboard the flight, after the aircraft door had been closed and all other First Class passengers' outer garments had been hung in the closet." Id. at 23.
As the Court noted in its previous order, 42 U.S.C. § 1981 provides, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C. § 1981(a). The right to make and enforce contracts "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Id. § 1981(b). The thrust of the Defendants' argument is that this language does not encompass Madison's allegations because he ultimately got everything he signed up for, even if it came by way of poor service. See, e.g. , Defs.' Reply 7, ECF No. 69 ("Bad service is inconvenient and it is frustrating, but it does not rise to the level of violating one's civil rights."); id. at 9 ("Plaintiff in this case has zero direct evidence of discrimination and ultimately, he was served. His jacket was hung. His drink order was taken. When there was an issue with the drink, he was offered another one. He was able to file a complaint with American Airlines. Plaintiff's right to contract was not interfered with and his § 1981 claim fails."). But this argument is a repackaging of the argument the Court already rejected in denying in part the Defendants' motions to dismiss.
Specifically, the Court previously found:
The Court also finds that Plaintiff has pleaded facts that, taken as true, demonstrate that Defendant Courtney's discrimination impaired Plaintiff's liberty to make, perform, modify, or terminate his contract with American, or to enjoy all the benefits, privileges, terms, and conditions of that contractual relationship. Cf. 42 U.S.C. § 1981(b). While Plaintiff purchased a coach ticket, Defendant American upgraded him to a first-class ticket as a benefit of his Platinum status that he earned through American's frequent flyer program. See Compl. 3, ECF No. 1. Plaintiff therefore received a first class ticket, not as a gratuity, but in exchange for repeated past purchases of American flights. Cf. Frequent Flyer Depot, Inc. v. Am. Airlines, Inc. , 281 S.W.3d 215, 224-25 (Tex. App.-Fort Worth 2009) ("In consideration for AAdvantage® members' purchasing paid travel on American ... American agrees to provide rewards points to those customers."). As such, he was entitled to the services that contractually accompany a first class ticket, including all standard first class amenities, such as coat and drink service. When, as Plaintiff has alleged, Courtney refused to provide him with those amenities and even positively mistreated him, her discrimination prevented him from fully enjoying the benefits of this contractual relationship with American-even as the other, non-African American first class passengers fully enjoyed them. See id. at 3-5.
April 24, 2018 Order 8-9, ECF No. 36. Yet the Defendants urge once again on summary judgment that Madison has no claim because he received that to which he was entitled. The Court continues to find this argument unavailing as a matter of law.
*773 The Defendants gloss over the nuance of Madison's allegations. Madison does not allege that he never was able to order a drink or that he never had his coat hung. Instead, Madison claims "that Courtney did not offer to hang his heavy wool 'pea coat' when she offered to hang the light blazer of the Caucasian gentleman seated next to him, and offered to hang the coats of all of the other First Class passengers." Pl.'s Resp. 22, ECF No. 66 (emphasis added). Madison therefore claims he was denied a privilege and benefit of the first-class ticket that no white passenger was denied-an offer to hang any outer garments. Next, Madison claims "Courtney took drink orders from all of the first class passengers except Plaintiff," Compl. ¶ 9, ECF No. 1, and that after Madison requested a beverage-and after Courtney responded mockingly-Courtney returned with a beverage that contained mucus, id. at ¶¶ 10-12. This raises two potential incidents of discrimination: (1) Madison was never offered drink service and (2) Madison was served an adulterated beverage while no white first-class passenger was.
In other words, Madison alleges that, in multiple contexts, he was denied "the same right ... to make and enforce contracts ... as ... enjoyed by white citizens ... includ[ing] ... the enjoyment of all benefits [and] privileges ... of the contractual relationship." 42 U.S.C. § 1981(a) and (b) (emphasis added). As the undisputed evidence shows, Madison's first-class ticket entitled him to an offer of coat service and an offer of beverage service-both of which he claims he did not receive. See Pl.'s Resp. App. 24, ECF No. 67. That is, Madison does not simply claim he received poor service, but that he was denied the full benefits of the relevant contractual relationship while all white first-class passengers were afforded the full benefits of the relevant contractual relationship. This distinguishes Madison's claims from the retail cases cited by the Defendants, which involved retail contracts-contracts that do not promise a particular level or type of service and instead implicate only a transaction. See, e.g., Arguello v. Conoco, Inc. , 330 F.3d 355, 358 (5th Cir. 2003) ("To establish a deprivation of § 1981 rights in the retail context, the plaintiff must demonstrate 'the loss of an actual, not speculative or prospective, contract interest.' " (citation omitted)); id. at 358-59 ("The law in this circuit for § 1981 claims in the retail context is established by Morris [v. Dillard Dep't Stores, Inc. , 277 F.3d 743 (5th Cir.2001) ]... The Morris court cited with approval, inter alia, Henderson v. Jewel Food Stores, Inc. , 1996 WL 617165, 1996 U.S. Dist. LEXIS 15796 (N.D. Ill. Oct. 23, 1996) (No. 96-C-3666 ), as holding that a § 1981 claim must allege that the plaintiff was actually prevented, and not merely deterred, from making a purchase or receiving service after attempting to do so." (cleaned up)); id. at 360-61 (noting cases involving "discriminatory service in restaurants and clubs," for example, are different than cases involving discrimination in the retail context "because dining at a restaurant generally involves a contractual relationship that ... entitles the customer to benefits in addition to the meal purchased" and reasoning that "[r]estaurants are, in that respect, significantly different from retail establishments").
The Court therefore DENIES the Defendants' motion for summary judgment on the ground that Madison fails to state a claim under 42 U.S.C. § 1981.
B. Genuine Issues of Material Fact Remain
Defendants also move for summary judgment on the ground that "there is no genuine issue of material fact on a requisite element of Plaintiff's § 1981 discrimination claim" because Madison "has no competent summary judgment evidence to show that Defendants intended to discriminate *774 against him based on his race." Defs.' Br. Supp. 9, ECF No. 63. Under the McDonnell Douglas framework, Madison bears the initial burden of establishing a prima facie case of contract discrimination.
The Court finds that Fahim v. Marriott Hotel Services, Inc. , 551 F.3d 344 (5th Cir. 2008), offers an instructive formulation of the elements of a prima facie contract-discrimination case. In Fahim , the Fifth Circuit adopted the district court's framework, which provided that the plaintiff could meet her initial burden under McDonnell Douglas by showing "that (1) she is a member of a protected class; (2) she attempted to contract for the services of a public accommodation; (3) she was denied those services; and (4) the services were made available to similarly situated persons outside her protected class." Id. at 350. Rephrasing the Fahim elements, Madison may establish a prima facie case by offering evidence that (1) he is a member of a protected class, (2) he attempted to enjoy certain privileges and benefits of his first-class ticket, (3) he was denied those privileges and benefits, and (4) those benefits and privileges were made available to similarly situated persons outside his protected class.
There is no dispute here as to the first prong. As to the remaining prongs, Madison alleges four separate facts to support his claim that he was denied privileges and benefits offered to similarly situated individuals: (1) he was not offered coat service while all other first-class passengers were, (2) he was not offered drink service while all other first-class passengers were, (3) Courtney spit in his drink, and (4) he was not permitted to file a formal complaint with the gate agent. As an initial matter, the Court finds Madison's fourth factual allegation-that he was not permitted to file a formal complaint-cannot support a claim under § 1981 as a matter of law. The Defendants point out it is American's policy that passengers lodge formal complaints online, not with gate agents. See Defs.' Br. Supp. 17, ECF No. 63. Madison does not-and seemingly cannot-dispute this policy or otherwise demonstrate that any similarly situated individual outside Madison's protected class was permitted to submit a formal complaint with the gate agent. The Court therefore finds that the Defendants are entitled to summary judgment on Madison's claim that his inability to file an immediate complaint with the gate agent demonstrates a § 1981 violation.
With respect to the remaining three factual incidents alleged, the Court finds that Madison has satisfied his initial prima facie burden. "The burden of establishing a prima facie case of disparate treatment is not onerous." Burdine , 450 U.S. at 253, 101 S.Ct. 1089. Madison has shown by a preponderance of the evidence that (1) he was denied the customary coat service,[2] (2) he was denied the customary beverage service,[3] and (3) a foreign substance resembling mucus was found in the drink he did receive.[4]
*775 In response to these alleged instances of discrimination, the Defendants offer a series of justifications they claim are legitimate and nondiscriminatory. See Burdine , 450 U.S. at 254, 101 S.Ct. 1089 (noting a defendant may "rebut the presumption of discrimination by producing evidence that the" perceived discriminatory treatment was justified by "a legitimate, nondiscriminatory reason"). For example, with respect to Madison's claim that Courtney did not offer to hang Madison's coat, the Defendants respond that "[t]he boarding process is one of the busiest times of the flight for flight attendants, especially when working the first-class section of the aircraft" and that, for this reason, "Courtney may have offered to hang some jackets and then was alerted that there was a problem in another cabin that needed her attention." Defs.' Br. Supp. 12-13, ECF No. 63. With respect to Madison's claim that Courtney skipped Madison during beverage service, the Defendants respond that "Courtney saw that Plaintiff was working on his laptop, with his headphones on, followed her training, and did not interrupt him." Id. at 15. Finally, the Defendants deny that the substance in Madison's drink was mucus and deny that it came from Courtney. See id. at 15-16.
Whether there was mucus in Madison's drink and, if so, where it came from are disputed material facts. See Defs.' Br. Supp. 15, ECF No. 63 ("Plaintiff has no evidence that the substance in the drink is spit or mucous."); Pl.'s Resp. 22, ECF No. 66 ("[E]veryone who saw the drink on the flight, who had an opportunity to view it firsthand and from every angle, identified the foreign substance in it as human mucus."). And assuming the Defendants have met their burden to offer competent evidence of legitimate, nondiscriminatory justifications for delayed coat and beverage service,[5] the Court finds the Defendants fail to demonstrate there is no genuine dispute about any fact material to Madison's ability to prove the Defendants' nondiscriminatory justifications are unworthy of credence or are mere pretext. See Burdine , 450 U.S. at 253, 101 S.Ct. 1089 ("[S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."). For example, the Defendants assert Courtney ultimately hung Madison's coat. Defs.' Br. Supp. 14 ECF No. 63 ("When Plaintiff wanted his jacket hung, he got Courtney's attention, requested that she hang up his jacket, and she did so, *776 without incident."). Madison claims she did not. Pl.'s Resp. 23 n.6, ECF No. 66 ("Madison testified that his heavy winter coat was "sprawled" on his lap, that he was in a bulkhead seat and thus had no ability to store it under a seat ahead of him, that he intended to work on his laptop during the flight, and that he ultimately got Groves to hang it up before the flight took off."). Defendants argue that Madison was distracted during beverage service and that Courtney followed her training to move on. Madison argues Courtney continued to deliberately avoid serving him. Pl.'s Resp. 11, ECF No. 66. And Courtney testified in her deposition that she apologized upon seeing a foreign substance in Madison's drink. Defs.' Mot. Summ. J. App. 53, ECF No. 64. But Madison argues she did not. Pl.'s Resp. J. Madison Decl. 3, ECF No. 66-1.
All these factual disputes are material to Madison's ability to prevail on his claims "either directly by persuading the court that a discriminatory reason more likely motivated the [alleged incidents] or indirectly by showing that the [Defendants'] proffered explanation is unworthy of credence." Burdine , 450 U.S. at 256, 101 S.Ct. 1089. Accordingly, the Court GRANTS summary judgment on the allegation that requiring Madison to submit a formal complaint online violated 42 U.S.C. § 1981 but DENIES summary judgment with respect to all other claims.
C. Damages Will Be Proved at Trial
Whether and to what extent Madison is entitled to compensatory and punitive damages depends on the resolution of the many outstanding factual disputes. See, e.g. , Defs.' Br. Supp. 20. ECF No. 63 ("Plaintiff is only entitled to recover punitive damages if he demonstrates that Defendants engaged in a discriminatory practice with malice or reckless indifference to his federally-protected rights."). Accordingly, the Court DENIES summary judgment on damages.
IV. CONCLUSION
For the foregoing reasons the Court GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment, (ECF No. 62 ).
SO ORDERED on this 8th day of January, 2019 .

There is apparently a genuine dispute as to this material fact. Compare Defs.' Br. Supp. 25, ECF No. 63 ("Courtney hung up Plaintiff's jacket.") with Pl.'s Resp. 23, ECF No. 66 ("Courtney and Madison have both testified that Madison's coat was ultimately hung up by Rosland Groves.").

See Pl.'s Resp. 10, ECF No. 66 ("He testified that Courtney began treating him differently from the other passengers from the moment he was seated, by not offering to hang his coat while offering to hang the outer garments of the other passengers, and by not offering him a beverage when she offered beverages to the other passengers." (citing Pl.'s Resp. App. 39-40, ECF No. 67 ; J. Madison Decl. at ¶¶ 8, 9, 18)).

Ibid. ; Pl.'s Resp. 11, ECF No. 66 (testifying "didn't make a motion to get my attention or say Did you want something? Which is pretty typical, whether you're riding in First Class or - or coach. So my next interaction was to get her attention because -- she went all the way through First Class, did not engage me." (citing Pl.'s Resp. App. 30, ECF No. 67 )).

See Pl.'s Resp. Exs. A and B, ECF No. 66-1 ; see generally Pl.'s Resp. 12-15, ECF No. 66.

Madison questions whether the Defendants satisfied their burden under McDonnell Douglas to proffer evidence of legitimate, nondiscriminatory reasons for the challenged conduct by introducing the affidavit of an expert and speculating as to hypothetical reasons that could have explained the challenged conduct. See Pl.'s Resp. 17, ECF No. 66 ("The 'expert's' proposed nondiscriminatory reasons are therefore wholly unsupported by the evidence because the evidence establishes that none of the suggested alternatives actually occurred. They therefore do not meet Defendants' burden under McDonnell Douglas. "). There may be a question whether the Defendants could satisfy their burden by introducing an expert to offer possible legitimate explanations rather than by introducing evidence regarding the actual facts and circumstances. See Burdine , 450 U.S. at 255, 101 S.Ct. 1089 ("[T]he defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's [allegedly discriminatory treatment]. The explanation provided must be legally sufficient to justify a judgment for the defendant."). But the Court need not decide this issue here because, even assuming the Defendants have satisfied their burden, the Court finds genuine issues of material fact preclude summary judgment.